Cleveland *v.* Boerum.

---

## CLEVELAND *vs.* BOERUM and others.

Where a suit is instituted for the foreclosure of a mortgage, and during its pendency the mortgagors are declared bankrupts, and they assign their property to the official or general assignee in bankruptcy, such assignee need not be made a party to the suit.

And if the assignee, without making any effort to be substituted as a party, or to interfere in the foreclosure suit, suffers the same to proceed to judgment, and sales to be made to innocent purchasers, by whom the lands are improved, and he then sells and conveys the right and interest of the bankrupts in the equity of redemption, to third persons, the latter cannot redeem the mortgaged premises from the mortgage and sale.

Under such circumstances, the equity of redemption of the mortgagors, and all claiming under them as purchasers, whose title accrued after the notice of *lis pendens* in the foreclosure suit was filed, including their assignee in bankruptcy, is effectually barred by the decree in that suit.

THIS was a motion to dismiss the complaint, on the ground that it did not contain facts sufficient to constitute a cause of action. The action was brought to redeem property from a mortgage. The material facts will be found in the opinion of the court.

*A. Thompson,* for the plaintiff.

*John A. Lott, Philip Hamilton* and *S. M. Meeker,* for the defendants.

S. B. STRONG, J. The plaintiff in this action seeks to redeem a large number of lots in Williamsburgh from a mortgage upon them, and other lands, made by John S. McKibben and Thomas Nicholls, to Abraham Henry and William Boerum. The mortgage was dated and executed on the 30th of March, 1836, and given to secure the payment of $39,000 with interest, on or before the first day of April, 1841 ; and was recorded on the second day after its date. On the same day McKibben and Nicholls conveyed the one-fourth part of the mortgaged premises to George D. Strong, and on the 18th of December, 1837, Nicholls conveyed his remaining estate in such premises to his co-tenant, McKibben, for the consideration of one dollar. Previously to February, 1842, the mortgage debt had been reduced to $32,000, and some portions of the land had been released from the lien of the mortgage. In that month the mortgagees instituted a suit in the then court of chancery against McKibben, Strong and others, to foreclose the mortgage, and a notice, in the usual form, of filing their bill, and of the pendency of the suit, was duly filed on the 7th of March, 1842. McKibben and Strong were, upon their respective petitions, declared and decreed to be bankrupts under the act of congress of the 19th of August, 1841, the former on the 16th of June, and the latter on the 28th of July, 1842, and William C. H. Waddell thereupon became their assignee, pursuant to his general appointment by the district court. The foreclosure suit was then pending, and the plaintiffs therein proceeded without making such assignee a party. A decree of foreclosure and sale was entered (according to the complaint) on the 22d of November, 1842, but in reality, subsequent to that date. Pursuant to that decree, such parts of the mortgaged premises as had not been released, were sold in several parcels to various purchasers on the 7th of January, 1843, for the aggregate sum of 19,351 dollars and 12

Cleveland *v.* Boerum.

cents. Deeds to the purchasers were subsequently executed, under which the defendants in this action, some directly, but most of them by subsequent conveyances, now hold their respective lots. Waddell, the assignee, conveyed to the plaintiff McKibben's interest in the mortgaged premises by a deed bearing date on the 24th of November, 1845, for fifty cents, and Strong's interest in said premises, by two deeds, dated respectively on the 5th and 18th of March, 1846, each for the consideration of one dollar. In February, 1846, the plaintiff tendered to Abraham and Henry Boerum the amount of the unpaid principal and interest of the mortgage, with such taxes and assessments on the mortgaged premises as they had paid, which tender was refused by them. The plaintiff now asks and demands that it may be ordered and adjudged that he is entitled to and may redeem the said premises from the said mortgage; that an account may be taken of what is now due, the interest to be calculated up to the time of his tender, and no longer; and that upon the payment of what may be found to be due within a period to be prescribed by the court, the defendants may be decreed to surrender to the plaintiff possession of the premises held by them, with their title deeds, and to reconvey and reassign such premises to him, free from all charges and incumbrances.

It is quite apparent, from the facts which I have stated, that if the plaintiff has acquired any interest in the premises in dispute, it is as a prowling assignee. Waddell, the assignee in bankruptcy, although apprised by the inventory annexed to McKibben's petition, that he and his co-tenant were entitled to the equity of redemption in the mortgaged premises, and that proceedings to foreclose the mortgage had been instituted, made no effort to be substituted as a party, although the act gave him the right, and if the interest of creditors required it, made it his duty to do so. Without any attempt to interfere, he suffered the foreclosure suit to proceed to judgment, sales to be made to innocent purchasers, the lands to be held and improved by them or their vendees for upwards of two years, and then conveyed a supposed right (for the benefit of creditors) for the sum of two

dollars and fifty cents—a sum which was probably insufficient to pay the expenses of the transaction. These circumstances must have been known to the plaintiff, and he must have supposed, too, that he could not enforce his claims, if at all, without expensive litigation, and to the prejudice of those who had acted in good faith, and doubtless with ordinary caution. Still, a prowling assignee, and especially one who has purchased under an official sale, may have a right to redeem. (*Anon*, 3 *Atk*. 313,) and if "the law allows it," the court must "award it."

The plaintiff contends that the decree in the foreclosure suit did not bar the equity of redemption, as the right of the owners thereof, who were two of the original defendants, had during its progress become vested in their assignee in bankruptcy, who had not been made a party. This is his main position, and if he fails in establishing that, he must fail altogether. There can be no doubt as to the existence or soundness of the rule, that in an equitable action in rem relative to real estate, the interest of a purchaser from one of the defendants during the pendency of the suit, is barred by the decree, although such purchaser may not have been made a party. Lord Bacon, in the fourth volume of his works [p. 515,] says, that "no decree bindeth any that cometh in bona fide by conveyance from the defendant before the bill exhibited, and is made no party, neither by bill or order; but when he comes in pendente lite, and while the suit is in full prosecution, and without any order of allowance or privity by the court, then regularly the decree bindeth." In the case of the *Bishop of Winchester* v. *Paine*, (11 *Ves.* 194,) Sir William Grant says, that " he who purchases during the pendency of the suit is bound by the decree that may be made against the person from whom he derives title—the litigating parties are exempted from the necessity of taking any notice of a title so acquired ; as to them it is as if no such title existed, otherwise suits would be interminable, or, which would be the same in effect, it would be in the pleasure of one party at what period the suit should be determined. The rule may sometimes operate with hardship, but general convenience requires it." These remarks were cited with approbation, and the principle

was fully recognized by Chancellor Kent in *Murray* v. *Ballou*, (1 *John. Ch. R.* 578, 579, 580.) The rule is generally laid down without any exception or modification. Its terms are sufficiently broad to include the assignees of a bankrupt or insolvent debtor, who are technically purchasers of the real estate. Chancellor Walworth seems to think that such assignees are exempt from the rule. (*Sedgwick* v. *Cleveland*, 7 *Paige*, 291. *Anon*, 10 *Paige*, 20. *Johnson* v. *Fitzhugh*, 3 *Barb. Ch.* 360.) In the anonymous case in 10*th Paige* the point was not at all discussed and the opinion was expressed upon a mere motion. In the case in 3*d Barbour* the question was not necessarily involved in the decision, although it is true that a defendant in a former suit had been discharged as a bankrupt, and an assignee had been appointed *pendente lite* who had not been made a party. The point was not raised by the counsel, who objected in other particulars to the decree in the original suit. The vice chancellor (Judge Gridley) had said "where then was the irregularity in the decree ? Most clearly there was none." The chancellor, without any suggestion to that effect at the bar, said, "the decree in this was undoubtedly irregular, as the assignee in bankruptcy was not brought before the court." He cited no authority for this, but doubtless relied upon his decisions in the two earlier cases which I have quoted. The reason given by him in *Sedgwick* v. *Cleveland*, (7 *Paige*, 291,) is that the assignee upon whom the interest of the defendant has been cast by operation of law for the benefit of others, has a right to be heard for the protection of that interest. So indeed he has, and it would be erroneous to refuse him the exercise of it if he should claim it. But where would be the injury, if it should be left to his option to claim it or not ? If the right should be of any probable value, it would be the duty of the assignee to take affirmative action to sustain it, and make it available for the benefit of the creditors. If it should be worthless, there would seem to be no reason why the plaintiff, whose proceedings had been originally correct, should be put to a useless additional expense by reason of the conduct of an opponent, in which he had no participation. There would seem to be no good reason for in-

fringing a useful general rule, merely because an assignee might abuse or neglect his trust. Possibly, it might be a violent presumption, that an assignee would ordinarily have actual notice of the pendency of a suit against the bankrupt, particularly where the initiatory proceedings in bankruptcy had been instituted against him without his concurrence. But since the passage of our first statute, relative to filing notices of lis pendens, (*Act of April* 17, 1823, § 11, *p.* 213,) a knowledge of the pendency of suits in equity relative to real estate is easily attainable. The inventory of the estate of a bankrupt, or of an insolvent debtor, would apprise his assignee of the location and description of the real estate, and if that should not set forth (as it did in this case) that it was the subject of litigation, the fact might be readily ascertained at the office of the clerk of the proper county. The 3d section of the bankrupt act of 1841 provided that all suits in which the bankrupt is a party, might be prosecuted or defended by the assignee to their conclusion, in the same way, and with the same effect as they might have been by the bankrupt. With the knowledge which he could obtain from the notice of lis pendens, and the power to interfere in the suit given to him by the act, he could do full justice to the creditors without being brought in as a party by the plaintiff. Chancellor Walworth cites but one (and that an American) authority for his position, that the assignee of a bankrupt, constituted during the pendency of a suit, must be made a party, in order that the judgment should bind any part of the assigned property. It seems to be the rule in England, that bankruptcy in either party does not abate the suit, whether in equity or at law. (1 *Cook's B. L.* 621–4, *Hewitt and others, assignees of Robbins and others, bankrupts,* v. *Mantell,* 2 *Wilson R.* 372, *per Bathurst, J.*) The assignee may undoubtedly be let in to prosecute or defend the suit, but it should be at his own option, and not at the instance of the other party, and if he should not elect to interfere, the judgment would nevertheless be valid. If the action should be against the bankrupt, and for a claim which would be barred by his certificate, he might avail himself of the defense, even after judg-

Cleveland *v.* Boerum.

ment.   But surely no proceeding in bankruptcy could preclude the holder of a mortgage from instituting or maintaining an action to coerce the sale of the mortgaged property for the satisfaction of his debt.   The case cited by the chancellor (*Deas* v. *Thorn and others,* 3 *John.* 543) is certainly a strong one, to show that the assignee must be made a party, if the objection is raised during the progress of the suit; but it was not decided in that case that if the action is suffered to proceed without the addition or substitution of the assignee as a party, a judgment would be ineffectual as to the assigned interest.   The ordinary effect of a judgment *in rem,* as to real estate is, that it binds the original parties and those who may have succeeded as purchasers, to their interest, as to the subject matter of the suit, during its pendency ; and it cannot be divested of that attribute while it is suffered to stand.   The judgment in the foreclosure suit has not been assailed in its totality.   The plaintiff has not made any attempt to set it aside, or to procure a judicial declaration of its entire nullity, but simply seeks to arrest one of its conceded incidents.   The decision in *Deas* v. *Thorn* had no reference to real estate, to which the rule that purchasers during the pendency of the suit, are bound by a judgment against the original parties from whom they derive title, is mainly, if not exclusively, applicable.   The rule laid down in that case should not be extended and applied to cases where it would be productive of serious and often insurmountable difficulties. It frequently happens in foreclosure suits, that some of the parties entitled to the equity of redemption, or who have liens upon the mortgaged lands, are residents of other states, or of parts unknown, and in the fluctuations of the present age, they may become bankrupts or insolvent debtors, and find it necessary or expedient to take the benefit of some act for the relief of such unfortunate persons, during the progress of the suit.   Now if in such cases the judgments would be ineffectual unless the assignees of the bankrupt or insolvent debtors should be made defendants, it would be necessary to make repeated searches in the offices where their papers would be filed, in the states, districts or counties where they resided.   Even then there would

not be absolute safety, as there might be many changes in a remote state, such for instance as California, during the progress of a letter, containing the result of a search, to the place of its destination. Under such a rule there could not in many cases be any reasonable certainty for purchasers at sales in foreclosure suits. However regular all might appear from available sources of information, some prowling assignee, under an appointment made but a day before the decree of sale, might appear a year or two afterwards and tender the money due on the mortgage, and thus defeat the title of an innocent and indeed cautious purchaser altogether. But the evil would extend further; intended purchasers of real estates, in their investigations as to title, would often have to extend their inquiries beyond what have heretofore been considered as safe limits, and where a mortgage sale of recent date happens to be a link in the chain, might have to hunt all over the union to ascertain whether some defendant in the foreclosure suit had not, during its pendency, become a bankrupt or insolvent debtor, and made an official or other assignment of his estate to some one who had not been constituted a party. Inconveniences, it is true, form no reason for setting aside or disregarding a well settled rule. But where an exception to a thoroughly established rule, not called for by, but in opposition to, its letter, is claimed, the fact that it might be productive of great mischief, is sufficient to prevent its allowance. As we have not, at present, any bankrupt law, and as it may be doubtful whether an insolvent discharge in another state, or an assignment under it, would be efficacious in this, the evils resulting from such exception might now be somewhat limited, but they would nevertheless be very considerable, and would counteract what has hitherto been considered as one of the most beneficial effects of the statutory requisition to file a notice of *lis pendens* on the institution of a suit for the foreclosure of a mortgage of *real estate.*

Upon the whole I am satisfied that the equity of redemption of McKibben and Strong, and all claiming under them as purchasers, whose title accrued after the notice of *lis pendens* in the foreclosure suit was filed, including their assignee in bank-

ruptcy, was effectually barred by the decree in that suit. It is therefore unnecessary that I should consider the other questions discussed at the bar.

The complaint must be dismissed, with costs.

[KINGS SPECIAL TERM, October 14, 1856. *S. B. Strong*, Justice.]