FIRST STATE BANK OF DUNKIRK *v.* CUNNINGHAM ET AL.

[No. 15,443. Filed April 13, 1937.]

*Roscoe D. Wheat,* for appellant.

*Eichhorn, Gordon & Edris* and *Lee F. Sprague,* for appellees.

DUDINE, J.—This was a suit to quiet title to certain real estate instituted by appellees. The complaint was in two paragraphs. Appellant filed a demurrer to the second paragraph of complaint, which demurrer was overruled. Appellant filed an answer in general denial and filed a cross-complaint in which it alleged a claim of title to the real estate. Appellee filed an answer in general denial to the cross-complaint.

The cause was submitted to the court for trial upon an agreed statement of facts, and the court found for appellees and quieted the title in them. Appellant filed a motion for new trial which was overruled, and perfected this appeal, assigning the overruling of the demurrer to the second paragraph of complaint, and the overruling of the motion for new trial as errors relied upon for reversal.

We will consider the second alleged error first. The causes for new trial which are presented are: (1) The decision is not sustained by sufficient evidence; (2) the decision is contrary to law.

The facts stipulated were as follows:

"... 2. On the 4th day of April, 1929, the Citizens State Bank of Hartford City, Indiana, commenced an action against Samuel Landon, and others, upon some promissory notes which had been executed by certain of the defendants to it and in the same action sought to set aside as fraudulent a deed of conveyance of the real estate in controversy in this action executed March 11, 1929, by Samuel Landon, who was then an unmarried man, to a daughter, Maggie V. Baker, who was also made a defendant to that action, and to subject said

real estate to the payments of the indebtedness alleged to be due said Citizens State Bank.

"3. . . . On April 10, 1929, after the said Citizens State Bank had commenced its action, it filed a *lis pendens* notice in due form in the office of the Clerk of the Blackford Circuit Court and caused the same to be recorded in the Lis Pendens Record of said court. . . .

"5. . . . Such proceedings were thereafter had in the action commenced by said Citizens State Bank as resulted in the venue of said cause being changed to the Jay Circuit Court. The issues which were formed in said cause were tried in the Jay Circuit Court and a personal judgment was rendered in said court against said Samuel Landon and in favor of the Citizens State Bank in the sum of $1,009.51. The court further adjudged the conveyance executed by Samuel Landon to Maggie V. Baker to be fraudulent and void and ordered and decreed that said conveyance be set aside and annulled and declared to be of no force and effect as to the plaintiff, Citizens State Bank, and decreed that the real estate be subjected to the payment of the sum due the Citizens State Bank from the defendant, Samuel Landon, and that it be sold as lands are sold on execution; . . . Said judgment was rendered on the 5th day of April, 1930. On the same day a transcript of said judgment was filed in the office of the Clerk of the Blackford Circuit Court and a certified copy of the decree over the signature and seal of the Clerk of the Jay Circuit Court was executed and delivered to the Sheriff of Blackford County, in which said real estate was situated, and he was commanded by the writ attached to said certified copy to levy upon and make sale of the real estate in controversy in compliance with the decree of the court.

"6. The certified copy of the judgment and decree rendered in the Jay Circuit Court was received by the Sheriff of Blackford County at 5:00 o'clock P. M. on April 5, 1930, and on the same day he levied upon and seized for sale the real estate in controversy. . . . The sheriff of Blackford County thereafter advertised the real estate in controversy for sale on the 28th day of April, 1930, which advertisement was made in due form as required by the statutes of the State of Indiana, and on April

29 (28), 1930, he sold said real estate as provided by statute at the door of the court house at Hartford City, Indiana, to the plaintiffs in this action, Washington A. Cunningham and Sarah J. Cunningham, for the sum of $1,400.00. Said defendants (plaintiffs) Cunningham and Cunningham paid said sum of $1,400.00 in cash and the Sheriff of Blackford County executed to them on said date his Sheriff's certificate of sale in due form and made full return of his proceedings in connection with the sale of said real estate. Said Sheriff's Certificate was also duly recorded in the office of the Clerk of the Blackford Circuit Court. . . .

"7. On April 23, 1929 (nineteen days after Citizens State Bank of Hartford City instituted its said cause and thirteen days after said *lis pendens* notice was filed) the First State Bank of Dunkirk, defendant herein, commenced four separate actions in the Blackford Circuit Court against Samuel Landon and others upon promissory notes which said Landon had theretofore executed to said defendant bank, and in said actions sought to set aside as fraudulent a certain deed of conveyance, being the same deed of conveyance and the same real estate as that involved in the first six findings set out herein. That in said proceedings so instituted by the First State Bank of Dunkirk a consolidation of said four separate actions was had and the consolidated case was tried as a single cause; that said defendants Samuel Landon, Maggie V. Baker, Charles Baker and Luther B. Simmons as assignee of said Samuel Landon, who were defendants in said proceedings in which the Citizens State Bank of Hartford City was plaintiff were likewise defendants in this action. . . . That such proceedings were had that on the 5th day of April, 1930, the same day on which Citizens State Bank of Hartford City obtained its judgment, the plaintiff obtained a personal judgment against said Samuel Landon on said notes so sued on in the amount of $1,839.27, and a judgment setting aside said conveyance from Samuel Landon to Maggie V. Baker of said real estate as fraudulent; . . . That the court ordered said real estate sold to satisfy said personal judgment against Samuel Landon, and appointed Luther B. Simmons as commissioner to effect said sale.

"8. Said Luther B. Simmons as such commissioner of the Blackford Circuit Court thereafter duly gave notice as required by said order of the Blackford Circuit Court that he would, as such commissioner, sell said real estate at his law office on the 28th day of April, 1930; that on said 28th day of April, 1930, the plaintiff (defendant) herein communicated to said Luther B. Simmons its bid for said real estate in the sum of $1,909.64. Said Luther B. Simmons as such commissioner accepted said bid and reported the sale of said real estate to the Judge of the Blackford Circuit Court on said 28th day of April, 1930, and also reported to said court a deed executed by him as such commissioner, which deed was dated April 28, 1930, and . . . was by said court approved, and which was on the 29th day of April, 1930, delivered to the First State Bank of Dunkirk and by it recorded in the office of the Recorder of Blackford County. . . .

"10. That on the 28th day of April, 1931, and before the commencement of this action the plaintiffs, Washington A. Cunningham and Sarah J. Cunningham, were still the owners and holders of the Sheriff's certificate of sale which had been issued to them by the sheriff of Blackford County, on the 28th day of April, 1930, and no one having redeemed or offered to redeem the real estate sold at said sheriff's sale, the plaintiffs presented said certificate to the sheriff of Blackford County, and demanded a deed for said real estate, and the sheriff of Blackford County thereupon executed to the plaintiffs (appellees) his deed for said real estate, which deed was accepted by the plaintiffs (appellees)."

This suit to quiet title was instituted by appellees on June 6, 1931.

Appellant contends that under the facts stipulated its title and appellees' title were of equal priority. No authorities are cited which support such contention.

Appellees contend "the filing of a proper *lis pendens* notice by the Citizens State Bank in the action commenced by it prevented the attaching of any intervening equities, and any lien created by a suit subsequently

filed would be junior and inferior to the lien which culminated in the title claimed by appellees." It should be noted that appellant's suit was instituted after the filing of the suit by the Citizens State Bank of Hartford City, and after said bank filed the *lis pendens* notice.

That the *Lis Pendens* statutes (Sec. 2-813 et seq. Burns 1933, §94 et seq. Baldwin's 1934) are applicable in suits to set aside a conveyance of real estate as being fraudulent, such as appellant and the Citizens State Bank of Hartford City filed against Samuel Landon et al. is not disputed. The applicability of the rule of *lis pendens* to such suits was recognized by our Supreme Court in *Wild* v. *Noblesville Building, etc.* (1899), 153 Ind. 5, 53 N. E. 944, and by this court in *Farmers Bank of Frankfort et al.* v. *First National Bank, etc.* (1903), 30 Ind. App. 520, 66 N. E. 503:

> "Two different theories have been advanced as the basis of the doctrine of *lis pendens*. Numerous courts and text writers state that it is referable to the doctrine of constructive notice, and say that a pending suit concerning property operates as notice to the world, and that a purchaser of the property under one of the parties is bound by the result of the litigation, because he is charged with such notice. The other view is thus stated in *Bellamy* v. *Sabine*, 1 De G. & J. 566: 'The doctrine as to the effect of *lis pendens* on the title of an alienee is not founded on any principles of courts of equity with regard to notice, but on the ground that it is necessary to the administration of justice that the decision of the court in a suit should be binding, not only on the litigant parties, but on those who derive title from them *pendente lite*, whether with notice of the suit or not.' On page 584, Lord Justice Turner makes this clear and concise statement: 'It is, as I think, a doctrine common to the courts both of law and of equity, and rests, as I apprehend, upon this foundation: that it would plainly be impossible that any action or suit could be brought to a successful termination, if alienations *pendente lite* were permitted to prevail. The plaintiff would

be liable in every case to be defeated by the defendant's alienating before the judgment or decree, and would be driven to commence his proceedings *de novo,* subject again to be defeated by the same course of proceeding.' The latter theory appears to have been adopted by most of the recent decisions. 2 Pom. Eq. Jur. . . . 632, and notes." *Bridges, Trustee, etc.* v. *Exchange Bank et al.* (1906), 126 Ga. 821, 826, 56 So. 97, 8 L. R. A. (N. S.) 463, 467.

That theory was adopted by this court in *Farmers State Bank of Frankfort* v. *First National Bank, etc.* (1903), 30 Ind. App. 520, 528, wherein this court said: "The doctrine of *lis pendens* is based on public policy and the necessity of giving effect to the proceedings of a court. Without it the administration of justice might always be defeated by successive alienations of the property in litigation."

In *Farmers State Bank of Frankfort et al.* v. *First National Bank et al., supra,* it was held that when, at the commencement of a suit to set aside a conveyance as fraudulent, a *lis pendens* notice is filed, and after judgment is rendered in the suit, and pending an appeal from the judgment, the real estate is sold, and by defendants conveyed to a third party, the grantee takes the real estate "subject to the final judgment of the court in the cause in which the question of title is being litigated." Such person "becomes a purchaser *pendente lite* and takes the chances incident to an appeal, since an appeal is not the commencement of a new action, but the prosecution of the same action in a higher court."

We know of no reason why the rule of *lis pendens* is not as necessary in cases like the instant case, to avoid alienations of the property in litigation, by judicial process, as it is to avoid alienation of such property by conveyance.

In *Bridges, Trustee, etc.* v. *Exchange Bank, supra,* the court held (p. 827):

"The (*lis pendens*) rule applies to a judgment creditor when rights as an encumbrancer are acquired during the existence of the *lis pendens,* and also to a purchaser of the property at a judicial sale had in execution of a judgment in favor of a person whose interests in the property thus sold are affected by the *lis pendens.* 21 Am. & Eng. Enc. Law, pp. 645, 646; Bennett, Lis Pendens, . . . 181, p. 242; *Secombe* v. *Steele,* 20 How. 94, 105, 15 L. Ed. 833, 836."

In Bennett's "Lis Pendens" (1887), Sec. 181, we find this statement: "After a bill is filed to set aside an alleged fraudulent conveyance of real estate and has become a *lis pendens,* a sale upon execution issued upon a judgment recovered after the bill became a *lis pendens,* will be subject to the pending suit and will be overreached by the purchase under the decree."

In 56 Am. St. Rep. (W. Va.), 872 (note), we find the following statement in a discussion of the *lis pendens* rule, to wit: "If the transfer is the result of an execution or judicial sale, there is no doubt that the purchaser thereat is within the rule of *lis pendens* to the same extent as if the transfer had been made by the debtor himself." The author of a note on the rule of *lis pendens* in Ann. Cases 1918 C, p. 66 et seq. says: "A purchaser at a judicial sale, where the action on which the sale is founded was commenced subsequently to another suit involving the title to the same piece of property stands in the same position as a purchaser from the defendant and is subject to all the rules of law governing a purchase *pendente lite.*" (Numerous authorities, including *Bretz et al.* v. *Johnson et al.* [1879], 65 Ind. 561, are cited in support of that statement.)

*Bretz et al.* v. *Johnson et al., supra,* recognizes that rule. "It is very generally held that the doctrine of *caveat emptor* applies with all its force to sale made by virtue of an execution." 68 L. R. A. 658 (note). Generally speaking there is no warranty in judicial sales

in Indiana. *Weaver* v. *Guyer* (1877), 59 Ind. 195; *Lewark* v. *Carter et al.* (1888), 117 Ind. 206, 20 N. E. 119.

We therefore hold that the decision of the court, that the title should be quieted in appellees, is sustained by sufficient evidence and is not contrary to law, but is in harmony with law. No new questions are presented under the alleged error in overruling the demurrer to the second paragraph of complaint.

No reversible error having been shown, the judgment is affirmed.

Laymon, J. concurs in result.