## ALLEN *v.* HALLIDAY.[1]

*(Circuit Court, E. D. Louisiana. May 21, 1886.)*

1. EQUITY—JURISDICTION—ADVERSE LEGAL TITLES TO LAND.

A court of equity has no jurisdiction to decide a conflict between adverse legal titles to real estate, in which complainant has a complete and adequate remedy at law.

2. LIS PENDENS—THIRD PERSONS.

The law is that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it at the outset. *Tilton* v. *Cofield*, 93 U. S. 168.

In Equity.

*B. R. Forman*, for complainant.

*R. H. Marr*, for defendant.

PARDEE, J. It seems to me that judgment should go for the defendant, on the ground that the suit is really one to recover real estate, and is a conflict between adverse legal titles, in which complainant has a complete and adequate remedy at law. It is true that complainant alleges, in his bill, that he is in possession of the real estate in question, and that a part of the remedy sought is the erasure, upon the public records, of certain deeds and mortgages which he alleges are *null* and *void*, and clouds upon his title. But the evidence in the case shows that, at the institution of the suit, the complainant was not, nor is he now, in possession of the said property, and that the title which he desires erased from the public records is a sheriff's deed to the property in question, making a legal title to the defendant. The *quasi* equitable title set up by the complainant, by reason of a common-law mortgage given to secure the loan of money, if valid at all, is merged in complainant's legal title. If complainant is the owner of the property in question, it seems he is the owner by a legal title, and his rights can be fully secured in an action at law.

It further seems that the doctrine of *lis pendens* is applicable in the case made by the evidence herein, and should operate to defeat the complainant.

The evidence discloses that in June, 1883, Halliday recovered a judgment against Bridewell, for $3,070, in the district court of the parish of Tangipaho, in this state, and that the same was duly recorded as a judicial mortgage; that on the tenth day of September, 1883, a writ of *fieri facias* was issued on the said judgment, under which the sheriff of the parish of Tangipaho (as by his return appears) seized, and on the eleventh of September, 1883, he gave notice to defendant, Bridewell, in writing, that he had seized and taken into

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

his possession, the property in question described in the notice. On the twenty-second of September, Bridewell gave the sheriff notice that the property so seized was his homestead, and as such exempt, and demanded a release of the seizure. On the twenty-ninth September, the sheriff advertised the property for sale. On the ninth October, Bridewell brought suit against the sheriff in the district court of the parish of Tangipaho, (the same court issuing the writ of *fi. fa.,*) in which suit he alleged the sheriff's seizure and advertisement of the said property under the aforesaid writ; that the property seized was his homestead, and as such exempt; and that he was entitled to an injunction, for which he prayed. The injunction was issued, and thereupon both the sheriff and Halliday answered; the latter setting up a full defense, and praying that the injunction should be dissolved, with damages, and the property in question declared subject to the satisfaction of the writ of *fi. fa.,* and ordered sold to pay the same. The district court gave judgment in favor of Bridewell, maintaining the injunction; and Halliday took a suspensive appeal to the supreme court.

In the mean time, pending said appeal, R. A. Allen, complainant herein, on the fifth day of February, 1885, brought suit in this court, on the law side, against Bridewell on a promissory note for $1,050, purporting to be secured by mortgage on the property in question. To this suit Bridewell first excepted, then answered, then withdrew his answer, and confessed judgment on the twenty-first of March, 1885. On the same day execution was issued to the marshal, who, by deputy, after 8 o'clock at night of the same day, levied on the property, and appointed a keeper, whom he found on the premises. He advertised the property for sale on the second May, on which day he did sell and adjudicate the same to Allen, notwithstanding the protests of Halliday's attorney and of the sheriff. The marshal's deed, given in pursuance of said sale, makes Allen's title to the property in question.

In the supreme court of the state, March 16, 1885, judgment was rendered in the case of *Bridewell* v. *Halliday and the Sheriff,* reversing the judgment of the district court dissolving the injunction, and giving general and special damages. The court decided that, as against Halliday's judgment, Bridewell was not entitled to the homestead exemption. The practical effect of the judgment rendered by the supreme court was that the property seized by the sheriff under the writ of *fi. fa.* was subject to the satisfaction of Halliday's judgment. After the legal delays the said judgment became final, and on April 5th the proper mandate was sent down, and on the tenth of April the sheriff advertised the property for sale under the seizure made in September, 1883, which he had preserved by retaining a copy of the writ of *fieri facias.* On the sixteenth of May, pursuant to advertisement, the sheriff sold and adjudicated the property to Halliday; and, immediately after the sale, he went, with Halliday's agent, on the

premises, ousted Allen's agent, put Halliday in possession, which possession has since been maintained.

Now, if we concede, in this case, that the sheriff, under the writ of *fi. fa.*, in 1883, failed to make a valid seizure of the property in question because he failed to take it into actual and physical custody, and that therefore, under said writ, the state district court did not acquire jurisdiction and custody of the property, still it seems that as the sheriff had made a seizure, and had served notice of the seizure upon the defendant, and had advertised the property for sale, (all of which was clearly sufficient to bind defendant, Bridewell,) and as thereafter the suit was instituted in the same court by Bridewell, against the sheriff and the judgment creditor, to determine whether or not the said property should be sold under the said seizure to satisfy the said writ, that thereby the said district court did become fully seized and possessed of the jurisdiction and custody of the said property. In other words, whatever defect there may have been on the part of the sheriff in the service and levy of the writ of *fieri facias*, the same was cured by the suit instituted between the parties in the same court to determine whether the property should be sold under the service as made. As to Bridewell there was certainly such a seizure of the sheriff, and such a custody of the court,—such a *lis pendens*,—that he could not have sold or alienated the property during the litigation, to the prejudice of Halliday's demands under his judgment.

The general rule that no alienation of property is permitted while a suit is pending in relation to it, either in law or equity, is familiar and well settled. See *Stoddard* v. *Myers*, 8 Ohio, 203; *Turner* v. *Babb*, 60 Mo. 342.

"Those who purchase at an execution sale will be affected in the same manner as purchasers directly from the defendant, where the action upon which the execution is based, has been commenced subsequent to that in which the title to the property is litigated." See Wade, Notice, § 377.

"The law is that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset." *Tilton* v. *Cofield*, 93 U. S. 168.

A decree will be entered dismissing complainant's bill, with costs.