JOHNSON *v.* EQUITABLE SECURITIES COMPANY, and
*vice · versa.*

A bona fide purchaser at sheriff's sale, who has paid the purchase-money without notice of an equity, will be protected against the same.

Argued January 2, — Decided February 5, 1902.

Levy and claim. Before Judge Littlejohn. Webster superior court. April 2, 1901.

*J. B. Hudson* and *Allen Fort,* for plaintiff.
*E. A. Hawkins,* contra.

COBB, J. This was a claim case, upon the trial of which the following facts appeared: On November 12, 1884, I. A. Whaley went into possession of a certain described tract of land, under a bond for titles from Alex. Chappell, and paid the larger portion of the purchase-money. On November 9, 1887, a judgment was obtained against Whaley. Execution was issued on this judgment, and Johnson, the plaintiff in error, became the owner thereof as transferee. On March 5, 1888, Whaley transferred his bond for titles to Jowers, to secure a debt due him. Whaley subsequently paid Jowers the amount due him, and on November 6, 1888, Jowers transferred the bond for titles to Whaley's wife. On November 15, 1888, upon the payment of the balance of the purchase-money, Chappell made Mrs. Whaley a deed to the land. Thereafter the Equitable Mortgage Company took from Mrs. Whaley a deed to this land to secure a loan made to her. A portion of the money obtained on this loan was used in paying the balance due Chappell on the purchase-money of the land. Judgment was obtained by the Equitable Mortgage Company against Mrs. Whaley, and the land brought to sale, when the Equitable Securities Company, the defendant in error, became the purchaser. The execution issued on the judgment against Whaley obtained in 1887 was levied, and the property advertised to be sold in March, 1900, when the Equitable Securities Company interposed a claim. The plaintiff in execution offered evidence tending to show that the Equitable Mortgage Company had notice, at the time it took its deed from Mrs. Whaley, that the larger portion of the purchase-money of the land had been paid by her husband prior to the transfer of the bond for titles, and that

such transfer was without consideration. Error is assigned upon the refusal to admit this evidence. The court directed a verdict finding the property not subject, and error is assigned upon this ruling. The uncontradicted evidence shows that the Equitable Securities Company, the claimant, at the time of its purchase of the property at sheriff's sale, had no notice whatever of the voluntary transfer of Chappell's bond for titles from Whaley to his wife; this being the effect of the transfer from Jowers to her. Whaley of course could not assert this equity against the Equitable Securities Company, for the simple reason that as between him and his wife the voluntary transfer of the bond for titles was valid and binding. Can a judgment creditor of Whaley assert his lien against the interest of Whaley in the land?

There was a provision in the Code of 1882, that when a person held property under a bond for titles and a portion of the purchase-money had been paid, the property might be levied on under a judgment against such person and the entire interest stipulated in the bond sold, the proceeds of the sale being appropriated, first, to the balance due on the purchase-money, and the remainder to judgment liens against the obligee in the bond, according to date. Code of 1882, § 3586. Under this law it would seem that the judgment lien would attach to whatever interest the obligee in the bond for titles might have in the land after any part of the purchase-money had been paid; and if this is true, then, at the date of the transfer by Whaley to his wife of the bond for titles in which he was obligee, the lien of the judgment controlled by Johnson had attached to Whaley's interest in the land. But the provisions of the Code of 1882 above referred to are not to be found in the Code of 1895, and it would seem that it was the intention of the codifiers that the provisions of the Civil Code, §§ 5432–4, inclusive, should be exhaustive of the subject as to how the interest of the obligee under a bond for titles should be sold, whether such sale was had at the instance of the judgment creditor or the obligor. Under the sections just cited, when a judgment creditor of the obligee in a bond for titles desires to sell the property, it is incumbent upon him to take up the debt necessary to be paid by the obligee in order to give him the legal title, by paying such debt with interest to date, if the debt is due, and interest to maturity if not due, and procure a conveyance to be made to the defendant in execution, or, if dead,

to his legal representative, by the obligor in the bond, and if he is dead, by his legal representative, and have the property levied upon and sold. The proceeds of the sale are to be appropriated, first, to the payment of liens superior to the claims taken up by the plaintiff in execution, necessary to put title in the defendant, and the balance to the execution under which the property was sold, and to other liens according to priority. It is contended by counsel for plaintiff in error, that the provisions of the Code of 1882 above referred to are still of force, and that therefore the judgment controlled by Johnson was a lien upon the interest of Whaley in the land at the date of the transfer of the bond for titles to his wife, and that by complying with these provisions the whole interest in the bond for titles could be sold and the money appropriated, first, to the payment to the Equitable Securities Company of the amount which was paid by the Equitable Mortgage Company in discharge of the balance due Chappell, and the remainder, or so much thereof as would be necessary, to the payment of the judgment controlled by Johnson. Under the view we have taken of the present case, it is unnecessary to determine whether the provisions of the Code of 1882 are still of force or not. If the Equitable Securities Company was a bona fide purchaser without notice of the equity which Whaley had in the land by the payment of the purchase-money, then that company would undoubtedly take the property freed from any such equity, whether it was sought to be enforced by Whaley himself or by any one claiming under him. As stated above, there is no evidence whatever that the Equitable Securities Company at the time of the sheriff's sale had any notice that there were any other persons than Mrs. Whaley who were at all interested in the land, she appearing from a duly registered deed to be the sole owner of the property. At the time of this transaction the record of a bond for titles was not constructive notice to any one of the interest of the obligee therein in the land. The rule is different now. See Acts 1900, p. 68. As a general rule, a bona fide purchaser without notice of an equity is protected both at law and in equity. If the Equitable Securities Company had been a direct purchaser from Mrs. Whaley as the result of a private transaction between them, and had no notice at the time of Whaley's equity in the land, there is no question that it would occupy the position of a bona fide purchaser and be protected against this

equity, whether asserted by Whaley or by some one claiming under him. "The mere fact that property is purchased by one and paid for with money of another does not vest the title to such property, as against third persons, in the one whose money paid for it. Nor does any legal or equitable right spring out of such fact in favor of such persons, against innocent purchasers who, in good faith, take the title from one who is apparently the true owner, and in truth is so except as to some secret equity of the party whose money has been used. There must be notice of such an equity before it can avoid a title otherwise good." *Moye* v. *Waters*, 51 *Ga.* 15. See also *Allen* v. *Holding*, 29 *Ga.* 485; *Fahn* v. *Bleckley*, 55 *Ga.* 81; *Nethery* v. *Payne*, 71 *Ga.* 374 (a); *Coody* v. *Lumber Co.*, 82 *Ga.* 799; *Hobbs* v. *Loan Co.*, 96 *Ga.* 770.

Does the Securities Company stand in any worse position because it purchased at judicial sale and not at private sale? It is true that for some purposes the purchaser at an execution sale stands in the shoes of the execution creditor, for the reason that in a sense he claims under him. But it is not true that such purchaser stands in the shoes of the execution creditor for all purposes. It does not seem that such a purchaser would be charged with notice of everything which the execution creditor has knowledge of in reference to the character of his claim or the interest of the defendant in execution in the property. To charge a purchaser at judicial sale with notice, in reference to the claim upon which the judgment is founded or the property to be sold, of everything that the execution creditor has knowledge of, would have the effect to deter persons from bidding at judicial sales; and a fear of knowledge on the part of the plaintiff in execution of some fact which might impeach the sale would thus, in many instances, work irreparable injury both to the execution creditor and the debtor whose property is being sold. The law has wisely provided that a purchaser at judicial sale is bound only to see that the officer has competent authority to sell, and is apparently proceeding to sell under the prescribed forms. Civil Code, § 5454. Further than this he is not required to investigate, so far as the sale is concerned. And if the sale has taken place under a valid judgment against the defendant in execution and has occurred at the time and place prescribed by law, and was conducted apparently under the prescribed forms, an innocent purchaser at such sale acquires

a title to the property sold, provided the defendant in execution had a good title to the same at the date of the judgment, or acquired such title between the date of the judgment and the date of the levy.   A purchaser at judicial sale may recover in ejectment by producing simply a sheriff's deed with the execution under which the sale was had, and showing that the title to the property sold was in the defendant in execution or he was in possession of the same after the judgment and before the levy.   Civil Code, § 5447; *Whatley* v. *Newsom*, 10 *Ga.* 74; *Parker* v. *Martin*, 68 *Ga.* 453 ; *Beck* v. *Bower*, 68 *Ga.* 738.   The sections and decisions just referred to are cited for the purpose of showing the favor with which the law regards a purchaser at a judicial sale, treating the title acquired by him as an original title, and not requiring him, even in an action of ejectment, to go behind such title, save for the purpose of showing that the defendant in execution had title to the property or possession of the same at the date of the levy, and relieving him from the burden placed ordinarily upon a plaintiff in ejectment, which requires him, if relying upon a paper title, to show a complete title, beginning with a grant from the State, down to a deed vesting the legal title in himself.   Is it to be presumed that such a favorite of the law is to occupy a worse position on account of having been a purchaser at a judicial sale than one who occupies the position of purchaser at private sale?   If a judicial sale has been regularly had by an officer authorized to conduct the same, under valid process, in the manner prescribed by law, and the person whose property is thus sold was the holder of the legal title at the date of the levy under which the sale was had, the purchaser at such sale would, in our opinion, occupy the same position as the purchaser at a private sale, so far as any secret equity held by some one in the property was concerned, if such purchaser bought the property and paid his money without notice of such secret equity.

This seems to be the first time that this question has arisen before this court.   There are no cases cited by counsel for either side which rule in terms the question under consideration, and we have in our investigations been able to find none in which the principle was directly ruled.   In other jurisdictions there seems to be some conflict in the rulings.   Mr. Rorer says, "the weight of authority is that third persons, *bona fide* purchasers at sheriff's sale, who have

paid the purchase-money without notice of an unrecorded deed, or equity, will be protected against the same." Rorer, Jud. Sales (2d ed.), § 1031. The following are some of the cases cited by the author to sustain the text quoted: Jackson v. Chamberlain, 8 Wend. 620; Waldo v. Russell, 5 Mo. 387; Den v. Richman, 13 N. J. L. 43; Scribner v. Lockwood, 9 Ohio, 184; Ohio Life Ins. Co. v. Ledyard, 8 Ala. 866; Orth v. Jennings, 8 Blackf. 420; Kellam v. Janson, 17 Penn. St. 467; Walker v. Elston, 21 Iowa, 529; Massey v. Westcott, 40 Ill. 160; Stewart v. Freeman, 22 Penn. St. 120. Under this view of the case, there was no error in directing a verdict finding the property not subject, nor was there any error in ruling out the evidence which tended merely to show that the Equitable Mortgage Company had notice of Whaley's equity in the land. The land was not subject to the execution in any event; and the judgment directing the verdict will therefore be affirmed. The cross-bill of exceptions raises the question as to whether the judgment was not dormant; but, under our established practice, this question will not be determined but the cross-bill will be dismissed. So far as this case is concerned, it is entirely immaterial whether the judgment is dormant or not.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concurring.*