BRIDGER *v.* EXCHANGE BANK *et al.*

| 126 | 821 |
| 129 | 82 |
| 129 | 859 |

1. After both parties to a case on trial have announced the evidence closed, and a motion for the direction of a verdict has been argued, it rests in the sound discretion of the judge to determine whether he will permit the case to be reopened for the introduction of further evidence.
2. Where, upon application of one of the parties, the judge permitted the reopening of the case, for the purpose of allowing certain evidence on a particular point to be introduced, he was not compelled to reopen it for the introduction of evidence generally.
3. Possession of land is notice of whatever right or title the occupant has.
4. The cases of *Johnson* v. *Equitable Securities Co.*, 114 *Ga.* 604, and *Malette* v. *Wright*, 120 *Ga.* 741, distinguished from the present one.
5. A lis pendens affects not only a purchaser from one of the parties to the suit, but also those who hold by conveyances under him.
6. The rule applies to purchasers both from the plaintiff and from the defendant.
7. It applies to a judgment creditor whose rights as an encumbrancer are acquired during the existence of the lis pendens; and also to a purchaser of the property at a judicial sale had in execution of a judgment in favor of a person whose interests in the property thus sold are affected by the lis pendens.
8. In this State a pending suit is a general notice of an equity or claim from the time the petition is filed and docketed, if this be followed by the issuance and service of process and due prosecution.
9. As to the plaintiff's complaint, and pleas or answers to it defensive in character and seeking merely to prevent a recovery, the lis pendens arises in favor of the defendant, as against a purchaser from the plaintiff, from the time of the commencement of the plaintiff's action; but relatively to a cross-action or cross-complaint by the defendant, setting up affirmative rights and praying affirmative relief against the plaintiff, the lis pendens begins from the filing of such cross-action or cross-complaint.
10. The protection afforded to a plaintiff, under the doctrine that lis pendens is notice to all the world, may be lost by a failure on his part to prosecute his action with due diligence.
(a) A similar rule would seem to apply to a cross-complaint, creating a new lis pendens when filed, if there be laches on the part of the person filing it in failing to duly prosecute it.

11. If land was conveyed by an absolute deed as security for a debt, a bond to reconvey being given, and the debtor remained in possession, the legal title held by the creditor as security was subject to a levy of an execution against him; and a purchaser at the sheriff's sale would acquire only the interest of the holder of the security deed, including the right which he then had to receive the indebtedness. But such sale would be subject to the right of redemption by payment by the holder of the bond for title.

12. One who attacks a levy as void for excessiveness carries the burden of sustaining his contention. The mere fact that the value of real estate levied on may be considerably more than the amount of the execution will not necessarily show that the levy is excessive. The property must be such as to be reasonably capable of subdivision and sale, so as to realize the amount of the execution. Encumbrances proved to be on it are also to be considered in determining whether the levy is excessive.

13. Under the evidence in the present case, the question of the reasonable divisibility of the property and the excessiveness of the levy should have been submitted to the jury.

Argued May 30,—Decided November 16, 1906.

Equitable petition. Before Judge Pendleton. Fulton superior court. November 27, 1905.

The petition of Harry L. Woodward alleged that J. C. Bridger, as trustee for his wife and children, was indebted to him in the sum of $750, besides interest and attorney's fees, on a promissory note dated September 24, 1892, and due ten days after date. It appears from a copy of this note, attached to the petition, that it was made payable to the order of "David Lamar, President," at the office of the American Trust and Banking Company, in the city of Atlanta, Ga., and was signed "J. C. Bridger." The plaintiff alleged, that to secure the payment of this note, Bridger, as trustee, made and delivered to him a warranty deed covering a described tract of land in Atlanta, which was subject to a mortgage for $2,000, in favor of Mrs. M. L. Harris (now Mrs. Zettler), and also conveying a lot on Marietta street, in that city, which was subject to a mortgage for $4,000, held by H. & J. Hirsch. The plaintiff prayed judgment for the amount due on the note and for a special lien on the property described in the security deed. This petition was filed August 15, 1893, and was served on August 18. By way of answer, the defendant averred that the note sued on was an accommodation paper, wholly without any consideration, and was his individual note, all of which was known by the plaintiff before he received it,

and at the time the security deed described in his petition was executed and delivered to him for the purpose of securing its payment. The defendant further pleaded that this deed was a cloud upon the title of his cestuis que trust and upon his title as trustee, and was null and void because without consideration and because it was given to secure his individual debt, and accordingly should be cancelled. After the filing of the defendant's answer, the Exchange Bank of Atlanta was allowed to intervene as a party plaintiff. Its petition (which was filed October 27, 1905) alleged: On September 27, 1892, J. C. Bridger, as trustee for his wife and children, executed a warranty deed, in which the wife joined, conveying to plaintiff the property described in his petition. The deed was recorded on October 26, 1892. On January 9, 1894, H. L. Woodward deeded his interest in the property to Emmett B. Woodward. This conveyance was recorded on May 30, 1895. The Exchange Bank, on February 28, 1902, caused to be levied on the land, as the property of Emmett B. Woodward, a fi. fa. in its favor, issued against him and others by the city court of Atlanta. The indebtedness which was the foundation of this execution accrued after he had received the deed to the property from H. L. Woodward. The property was sold at sheriff's sale and was bought in by the Exchange Bank, which holds a deed from the sheriff, dated April 1, 1902, and recorded April 5. The bank at that time had no notice that Emmett B. Woodward was not the absolute owner in fee simple of the property levied on and sold (although the present suit had previously been instituted), and did not know that J. C. Bridger had any claim to the property as trustee. It was alleged that the bank could not be affected with constructive notice of the existence of this suit, since it was not duly prosecuted, no pleadings having been filed or other proceedings had therein after the filing of the original petition in the fall of 1893, until a few days before the filing of the bank's petition, when the defendant filed his amended answer and cross-bill. From the record of deeds in Fulton county he did not appear to have any title, either legal or equitable, to the property, and at the time the bank made its levy and purchased the property, the same was unoccupied and tenantless. It was alleged that even if the property had been occupied and in the actual possession of J. C. Bridger or his tenants, such possession would not have amounted to notice to it of his claim as trustee; and the bank

prayed, that his cross-bill be stricken and the relief asked for therein be denied, and that the deed made by him as trustee to H. L. Woodward be declared a good and valid conveyance, passing title absolutely, so far as the bank is concerned, into H. L. Woodward. Bridger, as trustee, filed an answer to the bank's intervention, averring, that neither E. B. Woodward nor H. L. Woodward ever had possession of the land, that neither ever claimed title to it, and that E. B. Woodward knew all the facts connected with the transaction by which H. L. Woodward obtained a deed to the property from defendant, who was at the time, as he has ever since been, in open, notorious, exclusive, and continuous possession of the land as trustee. The defendant insisted that the sheriff's sale was illegal, because the levy was grossly excessive; that for a like reason a sale of the property for taxes was invalid, and the bank acquired no title by virtue of certain tax deeds under which it also claims; and he prayed that all of the instruments relied on by the bank as muniments of title be delivered up and cancelled, and that he be decreed to be the owner of the property as trustee for his wife and children. On the trial, counsel for the bank announced that it depended for title upon the sheriff's deed, and did not claim title by virtue of the tax deeds referred to. After the conclusion of the evidence, the court directed a verdict against the defendant and in favor of the bank upon the issues as to title, and he excepted.

W. H. Terrell, for plaintiff in error. L. Z. Rosser, J. H. Porter, and Dorsey, Brewster & Howell, contra.

LUMPKIN, J. 1, 2. After both parties had announced the evidence closed and while a motion for the direction of a verdict was being argued, it rested in the discretion of the court to determine whether he would reopen the case for the introduction of further evidence. Walker v. Walker, 14 Ga. 242 (5); Blackman v. State, 80 Ga. 785, 791 (6); Orr v. Garabold, 85 Ga. 373 (5); Powell v. State, 101 Ga. 9, 18; Green v. State, 119 Ga. 120 (3); Maddox v. State, 81 Ga. 325; Cushman v. Coleman, 92 Ga. 772 (4); Georgia R. Co. v. Churchill, 113 Ga. 14; Watson v. Barnes, 125 Ga. 733 (2). This was not an application seeking to save a nonsuit by supplying an omitted link in the chain of evidence and thus causing the case to proceed to a termination of the litigation, but a desire to add evidence to avoid the direction of a verdict, which addition would probably require a general reopening of the trial on the evidence.

No good reason was shown why the additional evidence was not offered before. On application the court did reopen the case to allow evidence to be introduced on a particular point; but, by having done so, he was not compelled to throw the case open broadly for the general introduction of evidence. Even as to a motion to reopen the case after a motion for nonsuit has been made and argued, and especially after the judge has announced his decision, the rule does not seem to be entirely arbitrary and regardless of the circumstances. *Cushman* v. *Coleman,* 92 *Ga.* 778; *Brooks* v. *Lowe,* 122 *Ga.* 361 (citing *McColgan* v. *McKay,* 25 *Ga.* 631, as to the general practice). But that point is not directly before us.

3, 4. The defendant (plaintiff in the cross-petition) testified that as trustee he was in continuous possession of the property, through his tenants, except that after the sheriff's sale the bank obtained and held possession for a time, when he again took possession. If this be accepted as true, which it must be on a motion to direct a verdict against him, so far as the matter of notice by possession is involved, the case falls within the general rule declared in the Civil Code, § 3931, that "possession of land is notice of whatever right or title the occupant has." This has been held to apply to possession under a bond for title (*Finch* v. *Bell,* 68 *Ga.* 594; *Jordan* v. *Rhodes,* 24 *Ga.* 480), and generally to any right or title of the occupant. *Neal* v. *Jones,* 100 *Ga.* 765; *Baldwin* v. *Sherwood,* 117 *Ga.* 827. This case is not controlled by that of *Johnson* v. *Equitable Securities Co.,* 114 *Ga.* 604. It was there held that a bona fide purchaser at sheriff's sale, who has paid the purchase-money without notice of a secret equity, will be protected. On page 608 it was said that "the purchaser at such sale would, in our opinion, occupy the same position as the purchaser at a private sale, so far as any secret equity held by some one in the property was concerned, if such purchaser bought the property and paid his money without notice of such secret equity." It was not decided that if he bought with notice he would obtain a good title, nor was the question of notice by possession discussed. In *Malette* v. *Wright,* 120 *Ga.* 741, it was held that where one sold property and made a fee simple deed thereto, but by mistake included in the deed certain land not intended to be included, and such deed was duly recorded, his remaining in possession would not give notice to the world of the mistake, so as to affect bona fide purchasers or those occupying a like

situation. This was the only point decided. The decision never intended to abrogate the general rule, but merely held that the facts of that case did not fall within it. What was said in the opinion must be construed in the light of the question involved.

Although the bond for title was made to Bridger as an individual, the trust estate had an interest, which could not be thus destroyed. If he had a right to make the conveyance and take the bond for title, the latter in his hands would be affected with an equity in favor of the trust. That possession puts a prospective purchaser on inquiry. See *Walker* v. *Neil,* 117 *Ga.* 733; *Austin* v. *Southern Home B. & L. Asso.* 122 *Ga.* 139.

5-10. Two different theories have been advanced as the basis of the doctrine of lis pendens. Numerous courts and text-writers state that it is referable to the doctrine of constructive notice, and say that a pending suit concerning property operates as notice to the world, and that a purchaser of the property under one of the parties is bound by the result of the litigation, because he is charged with such notice. The other view is thus stated in Bellamy *v.* Sabine, 1 De G. & J. (58 Eng. Ch.) 564. "The doctrine as to the effect of lis pendens on the title of an alienee is not founded on any principles of courts of equity with regard to notice, but on the ground that it is necessary to the administration of justice that the decision of the court in a suit should be binding, not only on the litigant parties, but on those who derive title from them pendente lite, whether with notice of the suit or not." On page 584 Lord Justice Turner makes this clear and concise statement: "It is, as I think, a doctrine common to the courts both of law and of equity, and rests, as I apprehend, upon this foundation,—that it would plainly be impossible that any action or suit could be brought to a successful termination, if alienations pendente lite were permitted to prevail. The plaintiff would be liable in every case to be defeated by the defendant's alienating before the judgment or decree, and would be driven to commence his proceedings de novo, subject again to be defeated by the same course of proceeding." The latter theory appears to have been adopted by most of the recent decisions. 2 Pom. Eq. Jur. § 632, and notes. Whichever opinion may be accepted, it will not affect the well settled rules concerning lis pendens, although if the second be upheld it may "prevent the exten-

sion of the doctrine, and restrict its further application to particular persons and conditions." Ibid.

An application of the doctrine to the present case involves a decision of several points. Not only is a purchaser from one of the parties to the suit affected, but also those who hold under him. *Beardsley* v. *Hilson*, 94 *Ga.* 50(4). It applies not merely to purchasers from the defendant, but also to purchasers from the plaintiff. Bennett on Lis Pendens, 287, § 239. "The rule has been applied with steadiness to all cases of transfer during the progress of a cause, notwithstanding the hardship of individual cases, from considerations of public policy and convenience. Suits would be interminable, if the rights of parties could be disturbed by mesne conveyances, and a necessity imposed for the introduction of other parties upon the record." Secombe v. Steele, 61 U. S. 105; Fash v. Ravesies, 32 Ala. 451; Berry v. Whitaker, 58 Me. 422; Cole v. Lake Co., 54 N. H. 242; Olson v. Leibpke, 110 Iowa, 595; Welton v. Cook, 61 Cal. 481; Borrowscale v. Tuttle, 5 Allen, 377; Garth v. Ward, 2 Atkins, 174; Bellamy v. Sabine, 1 De G. & J. (58 Eng. Ch.) 566, 580, 585, supra; 2 Pom. Eq. Jur. (3d ed.), § 633; Story Eq. Pl. (10th ed.) § 156. The rule applies to a judgment creditor whose rights as an encumbrancer are acquired during the existence of the lis pendens; and also to a purchaser of the property at a judicial sale had in execution of a judgment in favor of a person whose interests in the property thus sold are affected by the lis pendens. 21 Am. & Eng. Enc. L. 645-6; *Carmichael* v. *Foster,* 69 *Ga.* 372; Bennett on Lis Pendens, p. 242, § 181; Secombe v. Steele, 61 U. S. (20 How.) 94, 105; Allen v. Halliday, 28 Fed. 261; Cotton v. Dacey, 61 Fed. 481; Freeman on Judgments, § 205; Hope v. Blair, 105 Mo. 85 (24 Am. St. R. 366) ; Watson v. Wilson, 2 Dana, 406 (26 Am. Dec. 459) ; Ettenborough v. Bishop, 26 N. J. Eq. 262; McCauley v. Rogers, 104 Ill. 578.

When does the lis pendens begin? In England and in some States it has been held to be upon service of process or subpœna. In this State a pending suit is notice to the world from the filing and docketing, if followed by the issuance and service of process and due prosecution. Civil Code, § 3936. *Weems* v. *Harold,* 75 *Ga.* 867; *Cherry* v. *North & South R. Co.,* 65 *Ga.* 633. What then as to a cross-action or answer in the nature of a cross-bill seeking

affirmative relief? Does it relate back to the beginning of the suit and affect a purchaser from the plaintiff from that time, or does' it .operate as a lis pendens from the date of its filing? Two different opinions are entertained on this subject. The leading case on one side is Hall Lumber Co. *v.* Gustin, 54 Mich. 624, in which that distinguished jurist, Judge Cooley, delivered the decision. The seventh headnote reads as follows: "A suit and cross-suit constitute one cause, and notice of the suit is notice of the cross-suit also. So held in the case of a lis pendens filed in an original foreclosure suit, but not in a cross-suit for foreclosure; it was constructive notice to all the defendants." Strictly speaking, the exact matter before the court was this: A statute required (as in many States and now in England) a notice of a lis pendens to be filed in order to be effectual. On the bringing of a foreclosure suit the notice was filed. Later a cross-bill was filed, but no notice under the statute was filed as to it. The question was whether it was necessary to file such a notice as to the cross-bill, or whether that filed at the commencement of the suit covered the whole case. It would be perhaps too narrow a view to treat this decision as merely a construction of the Michigan statute; as the reasoning goes to the point of holding that "notice of the suit was notice of all that properly belonged to it," including the cross-bill as a mode of defense. In Bennett on· Lis Pendens, § 331 (p. 379-380), in stating this as a rule it is said: "That is to say, a lis pendens will exist as between all parties to the suit. It might be held otherwise as to third parties having no knowledge of the cross-claim." The only case referred to in this foot-note is the Hall case, and the criticism was evidently meant to apply to it. See also Henderson *v.* Wanamaker, 79 Fed. 736 (where, however, the answer of the defendant had been filed); Kinney *v.* Consolidated Va. Mining Co. 14 Fed. Cas. (No. 7, 827), 612(15). The adverse view is thus clearly stated in 2 Pomeroy's Equity Jurisprudence (3d ed. § 634): "I would remark, in passing, that while the general doctrine of notice by lis pendens and the foregoing special rules have ordinarily been applied to real property described by the plaintiff in his bill of complaint, they should, upon principle, apply with equal force to the 'counter-claims' and 'cross-complaints' authorized by the reformed procedure, by which the defendant alleges some equitable interest or right, and demands some affirmative equitable relief. In such

pleadings the defendant becomes the actor, and is to all intents and purposes a plaintiff." This remark is quoted approvingly, though the point is not decided, in Walker v. Goldsmith, 14 Ore. 139.

It appears to us that the proper determination of the mooted question depends largely on what is the extent of the lis pendens arising on the original suit? Or if the doctrine of notice be adopted, of what does the original suit give notice to one' dealing with the property? Mr. Pomeroy says (2 Eq. Jur. 3d ed. § 634) : "Lis pendens is notice of everything averred in the pleadings pertinent to the issue or to the relief sought, and of the contents of exhibits filed and proved. . . The notice arising from a pending suit does not affect property not embraced within the descriptions of the pleading; nor does its operation extend beyond the prayer for relief." "Averred" in what pleadings—in those filed by the complainant before the time of the purchase (together with certain amendments thereto, as will be seen below) and in the denials or defensive pleadings of the defendant, or in possible affirmative pleadings which may be thereafter filed by the defendant, not merely combating the plaintiff's case, but seeking affirmative relief? Generally amendments to a bill or petition relate back to the filing of such bill or petition. It has been held that a bill so defective in its averments as not to create a lis pendens may be subsequently cured by amendment, but the lis pendens will commence at the time of filing the amendment, if the defendant has been served with process. Norris v. Ile, 152 Ill. 190, 202, 43 Am. S. R. 233; see also Miller v. Sherry, 2 Wall. 237 (where the defect was for want of description of the property) ; Wortham v. Boyd, 66 Tex. 401 (where an original suit to cancel a deed was amended so as affirm the deed and enforce a grantor's lien) ; Mansur & Tebbetts v. Beer, 19 Tex. Civ. App. 311, 313; Letcher v. Reese, 24 Tex. Civ. App. 499; Stone v. Connelly, 58 Ky. 652 (71 Am. Dec. 499). Statements in some of the text-books imply that the continuity ·of the suit may be broken by a simple amendment, but this seems not to be well founded where the parties are the same, the property to be affected is the same, and the general purpose and object is the same. Turner v. Houbpt, 53 N. J. Eq. 526. It would appear, therefore, that when a suit is filed by a plaintiff, any one taking from the defendant a conveyance of the property involved takes with notice of, or subject to, the plaintiff's action as it stands, and that mere ordi-

nary or amplifying amendments which do not change the identity of the suit or affect the general purpose or object, or create a new lis pendens, will relate back to the date of the filing of the original petition. So also, if one purchases from the plaintiff, the suit operates as a lis pendens in respect to the property described and the relief prayed; and the purchaser may fairly anticipate that the defendant will resist the action, and that he will set up any appropriate defensive matter thereto. But he is not bound to anticipate that the defendant will bring a cross-action against the plaintiff in respect to the property or will file an affirmative cross-complaint against the plaintiff, setting up some equitable right and demanding affirmative equitable relief in regard thereto. Relatively to such affirmative cross-action or cross-complaint the defendant occupies the position of a plaintiff, and the lis pendens as to such cross-complaint operates as against a purchaser from the plaintiff only from the time when it is filed. It is evident that if the defendant had to file a separate action against the plaintiff in order to set up the affirmative claim and pray for relief, it would only operate as a lis pendens from the time when it was brought; and where, under our uniform procedure act, the plaintiff or defendant may assert all of his rights, legal or equitable, in respect to the subject-matter of the suit in one proceeding, the same reason would seem to apply to a cross-complaint or affirmative equitable plea praying relief. Under the very liberal system of amending which prevails in this State, the plaintiff may bring an action of complaint for land, which by amendment may be changed into an action seeking equitable relief in regard to the land; and in an equitable action, what would have required a supplemental bill in England can be brought in by amendment in Georgia. Civil Code, § 4969. The defendant may answer the plaintiff's suit by denying title; and subsequently he may amend by alleging affirmative equitable rights on his part in respect to the property and praying relief. Indeed it is quite common for a suit to begin as an apparently simple action at law, and terminate as a most complex action to settle equities and cross-equities.

If the rule which we have suggested above is not a correct one, and if a person who purchases from a plaintiff in a pending lawsuit were bound to anticipate all possible cross-complaints, which might greatly broaden the scope of the action or alter the nature of

the relief sought, and if he were affected by the lis pendens as to all such possible cross-complaints before they were filed, it would be an exceedingly dangerous matter to purchase property at all from any person who might happen to be either plaintiff or defendant in any sort of action. It is true that the defendant may often show by way of defense substantially the same matters as those on which his affirmative equitable plea would rest; and if one who purchases from the plaintiff after suit has been brought and while the defendant is entitled to plead, but before he has done so, is bound to anticipate that the latter will deny the plaintiff's right of recovery, and to take subject to his doing so, and to the result of the action, the difference in effect between this and his taking subject to a cross-complaint based on like facts may not appear to be great. But the distinction between mere defensive action and an effort to obtain affirmative relief is well recognized, even where similar facts are involved in the two. *English* v. *Thorn,* 96 *Ga.* 557. In Hart *v.* Hayden, 79 Ky. 346, it was held that "When a mortgagee has sued to foreclose his mortgage, and made another mortgagee a defendant, the action of the latter is not a lis pendens until he has filed his cross-petition and has process issued." In Garver *v.* Graham, 6 Kan. App. 344, where a husband brought an action of divorce, and his wife filed an answer and cross-petition, denying the grounds alleged by him, setting up grounds for divorce in her favor, that she was the owner of certain lands, describing them, and that her husband was the owner of certain other real estate and personal property, describing it, and praying that a divorce be granted her, that the real estate then in the name of her husband (describing it) might be decreed to her, that alimony should be granted, and that all of the property both real and personal should be appropriated to satisfy the decree, it was held, that the answer and cross-petition brought the property described within the jurisdiction of the court, and that a person subsequently taking a mortgage from the husband was bound by the judgment and decree rendered. See also Mansur & Tebbetts *v.* Beer, 19 Tex. Civ. App. 311, 313, supra.

In *Tinsley* v. *Rice,* 105 *Ga.* 285, it was said: "The protection afforded to a plaintiff under the doctrine that lis pendens is notice to all the world, may be lost by a failure on his part to prosecute his action with due diligence." See also Civil Code, § 3936. This ruling was in favor of one against whom the doctrine of lis pendens

would otherwise operate for the benefit of the plaintiff. A similar rule would naturally apply as to the defendant's cross-complaint. The defendant can not be charged with laches in not pressing the plaintiff's suit for him, but may be charged with laches for failing to duly press his cross-complaint. The bank holds under the plaintiff. It could hardly claim that the defendant lost whatever right existed in his favor under the plaintiff's suit, by virtue of the doctrine of lis pendens prior to the conveyances under which the bank holds, because the plaintiff failed to prosecute with diligence. Certainly the plaintiff could not successfully claim that, by reason of his own laches in prosecuting his action against the defendant, the latter should suffer. Can one who purchases under the plaintiff and, by intervention, becomes himself a party plaintiff, do so, if the defendant be not in laches? What duty was on him, before he filed his cross-complaint, to press the plaintiff's action? In Fox *v.* Reeder, 28 Ohio St. 181, 188, it was said: "The rule itself, though undoubted, will not be applied where the party has been negligent to the injury of innocent parties. As Sugden says in an early edition of his work, the application of the rule may rest upon the question whether or not the party seeking its benefit has been 'guilty of laches.'" Different courts have used different expressions in describing the negligence or failure to prosecute duly which may cause a loss of the protection afforded under the doctrine of lis pendens. Some have referred to it as negligence, some as gross negligence, some as a failure to duly prosecute, some as unusual and unreasonable or inexcusable negligence in prosecuting, and other expressions have been employed. Mere lapse of time in which the party who ought to prosecute an action has failed to do so, though it may be for a considerable period, is not conclusive, but may be explained by showing a reasonable excuse for the delay. Wickliffe's Executor *v.* Breckinridge's Heirs, 64 Ky. (1 Bush) 427; Watson *v.* Wilson, 32 Ky. (2 Dana, 407, supra; Hayes *v.* Nourse, 114 N. Y. 595 (22 N. E. 40). In Bennett on Lis Pendens, § 109, p. 179, it is said: "The ground upon which to place the invalidity of lis pendens for a failure to take action in pending suits, for want of 'full prosecution,' as provided in Lord Bacon's rule, is not, as in many cases seems to be supposed, negligence merely as such, but estoppel as warranted by such negligence, and other conduct on the part of those seeking the enforcement of lis

pendens." And this is substantially quoted by Mr. Justice Little in *Tinsley* v. *Rice,* 105 *Ga.* 290. Referring to the interposition by courts of equity of a bar on account of laches, it has been said that this power as exercised by courts of equity is well symbolized by the emblem of Time, "who is depicted as carrying a scythe and an hour glass, and that while with one he cuts down the evidence which might protect innocence, with the other he metes out the period when innocence can no longer be assailed." Graff *v.* Portland Town and Mineral Co., 12 Col. App. 106 (54 Pac. 854, 856).

Counsel for plaintiff in error urged that an intervenor took the case where he found it. *Charleston R. Co.* v. *Pope,* 122 *Ga.* 577. In that case it was held that an intervenor "could not be heard to make objections to the pleadings or process which the defendant vouching him into court did not urge." He would not be prevented, however, from contesting rights asserted antagonistic to his own.

11. If Bridger as trustee wrongfully made a conveyance to secure his individual indebtedness and took a bond for title from his grantee to himself as an individual, the equitable interest would be in him as trustee, and his holding would be for the benefit of the trust estate. *Bourquin* v. *Bourquin,* 120 *Ga.* 115. Aside from this, if one makes a promissory note and executes a deed to secure it, taking a bond to reconvey upon payment of the debt and remaining in possession; and if an execution against the grantee in the deed is levied on the property, what does the purchaser at such a sale acquire? Evidently the interest of the defendant in execution, whatever that may be. The continued possession of Bridger as trustee, as we have seen, gave notice to the world of his rights; and a purchaser under a sale against the grantee would acquire only the rights which the latter might have. *Parrott* v. *Baker,* 82 *Ga.* 364; *Wilkerson* v. *Burr,* 10 *Ga.* 117; *Leitch* v. *May,* 98 *Ga.* 714. If the grantee in the security deed made a conveyance to another, the second grantee could acquire no more relatively to the debtor in possession with bond for title than the first grantee had to convey; and if the sheriff's sale was under a judgment against the second grantee, the purchaser would acquire no more than if such second grantee had made a deed to him.

12, 13. One who alleges that a levy is void for excessiveness carries the burden of sustaining his contention. It does not follow

53

as matter of course that, because the value of land levied on is considerably more than the amount of the execution, the levy is void. The property may be incapable of subdivision, or such as can only be levied on in its entirety. *Forbes* v. *Hall,* 102 *Ga.* 47, 48; *Roser* v. *Georgia Loan & Trust Co.,* 118 *Ga.* 181, 182. In the present case, however, we think that there was enough evidence to require the submission to the jury of the question whether the property was reasonably capable of subdivision, and whether the levy was excessive. It appeared that the lot fronted fifty-five feet on a street, and extended back two hundred feet to an alley, fifteen or twenty feet wide, which gave an outlet to another street only a short distance away, that there were houses on the lot fronting on the public street, separately numbered, and that on the rear of the lot there was one frame house containing six rooms, and two containing two rooms. All of them were dwelling houses, and they were rented separately. Bridger testified, that the entire property was worth at the time of the sale $15,000, and that one of the two mortgages upon it had been paid off, leaving the other outstanding. No witness expressed the opinion that the lot was capable of subdivision; yet, considering the testimony above referred to, there was enough evidence to authorize this question to be submitted to the jury rather than to be determined by the court.

*Judgment reversed. All the Justices concur.*