### CRAIN, administrator, *v.* CARTER *et al.*

1. "He who takes with notice of an equity takes subject to that equity." Under the facts of the present case the defendant was in possession under a deed which had been duly recorded before the purchase by the plaintiff at sheriff's sale. The purchaser at the sheriff's sale therefore took title subject to the equity of the defendant. The facts being uncontroverted, the verdict for the plaintiff was unauthorized, and the court erred in refusing to grant a new trial.

2. There being no conflict in the evidence on the question of possession of the land by the defendant, the court erred in submitting to the jury as a contested issue the question of possession.

3. The rulings in the preceding headnotes are controlling, and decide the question raised in the other grounds of the motion for a new trial.

No. 4227. JUNE 12, 1924.

Equitable petition. Before Judge Roop. Heard superior court. January 19, 1924.

*E. S. Griffith, D. B. Whitaker,* and *Hall & Jones,* for plaintiff in error.

*F. S. Loflin, Smith & Millican, James Beall,* and *S. Holderness,* contra.

GILBERT, J. On June 8, 1906, Mrs. Josie L. Hendrick conveyed to P. F. Cuttino by deed (for the purpose of securing a debt) described land. Subsequently she contracted to sell 137 acres of the same land to J. L. Shelnutt, and conveyed the same to him by deed dated January 22, 1911. On January 2, 1909 (prior to the deed by Mrs. Hendrick to Shelnutt), Cuttino reconveyed all the land to Mrs. Hendrick for the purpose of levy and sale. Fi. fa. in favor of Cuttino against Mrs. Hendrick was transferred to Anderson & Brown, March 25, 1911. On November 7, 1911, the property was conveyed by sheriff's deed to J. R. M. Carter, and on the same day Carter conveyed to James Beall an undivided half interest therein. The above appears from the brief of evidence. Carter and Beall filed a petition against Shelnutt and W. A. McWhorter, alleging that Shelnutt had privately, secretly, and without the knowledge and consent of petitioners taken possession of a portion of the land conveyed to them by the sheriff's deed; that he was ploughing, cultivating, and renting the same to tenants, cutting and destroying the timber, and exercising acts of ownership; that Shelnutt had rented a small portion of the land to McWhorter, who had planted and growing on the same corn and other produce; that the defendants knew, when they took possession of said lands, that petitioners were the legal owners thereof, and that their purpose in doing so was to injure, damage, and harass petitioners, who have suffered damage to the extent of $200 as a result of the action of defendants; that Shelnutt is insolvent and unable to respond to any judgment which petitioners might obtain at law; and that unless equity intervenes, they will be without remedy to recover the damages suffered at the hands of Shelnutt and his confederates. The prayers were, that the defendants be restrained by injunction from trespassing further upon the land; that Shelnutt, his agents, employees, and confederates be permanently enjoined from trespassing upon or exercising acts of ownership over the same; that petitioners have judgment for

$200 as rent for the year 1912; and that they have a special lien upon all crops grown upon said land during that year. The answer of Shelnutt admitted insolvency, and pleaded that Cuttino had agreed to the sale of the land to him by Mrs. Hendrick, and that the land sold should be released from the deed to secure the debt due by Mrs. Hendrick; that the greater portion of the purchase-price paid to Mrs. Hendrick was by her paid to Cuttino upon her indebtedness to him; that some of the notes made by Shelnutt to Mrs. Hendrick were turned over to Cuttino, who collected the same; that the amount of his indebtedness had been reduced to $110 at the time of the transfer by Cuttino of his claim against Mrs. Hendrick; and that Shelnutt had conveyed the land as security for a debt. Trial of the case resulted in a verdict for the plaintiff, for injunction. The defendant's motion for a new trial was overruled, and he excepted.

After a careful consideration of the evidence our conclusion is that the verdict must be set aside. The controlling issue in the case is whether or not the purchaser of the land at the sheriff's sale bought subject to the rights of J. L. Shelnutt, acquired by the means of a deed from Mrs. Josie L. Hendrick, executed pursuant to and in accordance with an agreement between said grantor and grantee and P. F. Cuttino, the last named holding the security deed covering a larger tract of land, including the land in question. If the purchasers bought with notice of the agreement just mentioned, the conveyance to them by the sheriff did not extinguish the rights of Shelnutt, but were subordinate thereto. If they bought without notice, the sheriff's deed to them conveyed a title superior to the rights of Shelnutt. "He who takes with notice of an equity takes subject to that equity." Civil Code (1910), § 4529. "In the case of Cambridge Valley Bank *v.* Delano, 48 N. Y. 326, it was held: 'Where a purchaser has knowledge of any fact sufficient to put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry; and if he does not make it, he is guilty of bad faith or negligence to such an extent that the law will presume that he made it, and will charge him with the actual notice he would have received if he had made it'; and this doctrine is supported by numerous authorities. Wade, Notice, § 17, and au-

thorities cited." *Talmadge* v. *Interstate B. & L. Asso.,* 105 *Ga.* 550, 553 (31 S. E. 618). The deed from Mrs. Hendrick to J. L. Shelnutt was duly recorded prior to the sheriff's sale. This record of the deed was constructive notice to the world of all of the rights of Shelnutt acquired under the deed. Civil Code (1910), § 4198. It constituted such notice to a party, even though such party did not know of the record. *McElwaney* v. *MacDiarmid,* 131 *Ga.* 97 (3) (62 S. E. 20).

In addition to the recorded deed, the evidence established, without conflict, that Shelnutt was in possession of the land in dispute at the time of the sheriff's sale. A. G. Hendricks, sworn for the defendant, testified: "J. L. Shelnutt was put in possession of the land in controversy in 1907, at the time he contracted for it, and he remained in possession until his death. He was in possession on the date this [land] sold down here and Carter bought it, he had his deed to it. In reply to the question as to how J. R. M. Carter knew Shelnutt was in possession of this land, I answer, when we sold the second tract me and him talked about the trade about buying the notes. The second tract was sold to Shelnutt. I don't know as I told Carter that Shelnutt was in possession of the Fretwell place at that time, but he knew it. In answer to the question, did he tell you he knew Shelnutt was in possession of the Fretwell place? I answer, we talked about it, yes. That was before the sale down here by the sheriff, before he purchased the land at the sale." J. T. Jackson, sworn for the defendant, testified: "In reply to the question as to who was in possession of the land at that time [of the sale], I answer Jim Shelnutt was there on it. I don't remember how long he had been in possession of it; some time though. I don't know how many years. He remained in possession of it until his death. This sale was before his death." This witness also testified that he had a conversation with Dr. Carter, one of the plaintiffs, on the day of the sale, and that the latter inquired if Shelnutt was in town, and spoke about Shelnutt filing a claim to his land, and said the land was advertised for sale, and that if it were he, Carter, instead of Shelnutt, he would be there to file a claim to it; and, after the sale, that Dr. Carter wanted the witness to find out what Jim Shelnutt was going to do about it. J. E. Thompson testified that on the day the land was sold "a man by the name of Kelly lived on the land; that

Kelly was a tenant of J. L. Shelnutt and was working for Shelnutt; that Shelnutt moved on the land immediately after the sale." J. B. Favor testified that J. L. Shelnutt was in possession of the land in 1911 and was living there when he died; that he moved on it just before he got his deed, or right afterwards; that Shelnutt was either living on the land the day of the sale or up at his store. There was evidence that he had a store at a place called Central-hatchie. Dr. Carter, one of the plaintiffs, testified, in regard to possession, as follows: "I know where Jim Shelnutt lived at that time [of the sale], and he was living at Centralhatchie. He was not living on this place at that time, for I went down there that evening, the evening I bought it." James Beall, one of the plaintiffs, testified, in regard to possession, as follows: "On the occasion of the purchase of this land I went on the land, and a man by the name of Kelly was living on the land. He was there. I don't know whether he was living there or not. I went there the day Dr. Carter bid off the land here. J. L. Shelnutt was not living there then, but was living at Centralhatchie. I did not see him that day, but he was a merchant there."

The above constitutes, either literally or in substance, all of the evidence on the question of possession. Properly construed, this evidence shows without conflict that J. L. Shelnutt was in posses-sion of the land in dispute on the day of the sale, and had been since 1907, and continued in possession until his death thereafter. The evidence for the defendant Shelnutt was positive and un-equivocal that he was in possession at all times within the period stated, either in person or by his tenants. The utmost that can be said of the testimony for the plaintiffs is, as stated by Dr. Carter and Judge Beall, that on the day of the sale Shelnutt was not "living" on the land in dispute but was "living" at Centralhatchie. Judge Beall also testified that Shelnutt had a store at Central-hatchie. Entire and literal credence may, and doubtless should be, given to the testimony of Dr. Carter and Judge Beall. When this is done, their evidence does not conflict in any way with the testi-mony of the defendant. Judge Beall testifies that he found Kelly there on the land, and the undisputed evidence is that Kelly was a tenant working for Shelnutt. Conceding that Shelnutt was con-ducting a store and "living" at Centralhatchie, this does not deny his possession at the same time of the land in question. Therefore

we hold that the undisputed evidence showed possession of the land at the time of the sale previously and subsequently thereto in Shelnutt. The conclusion necessarily follows from such possession, together with the record of the deed, that Dr. Carter, purchaser at the sheriff's sale, was charged, as a matter of law, with notice of whatever equities Shelnutt had in the land. These equities were also established by the evidence without conflict. The deed from Mrs. Hendrick was introduced, upon which there was no attack. The evidence of the agreement with Cuttino in regard to the release of that portion of the tract of land purchased by Shelnutt from the lien of his security deed was also undisputed. There is not a suggestion in the record of any dispute as to that agreement. We cannot escape the conclusion, therefore, that Dr. Carter took his sheriff's deed subject to the rights of Shelnutt. This being true, the verdict for the plaintiffs is without evidence to support it, and it was error to refuse to grant a new trial. They rely largely on the case of *Johnson* v. *Equitable Securities Co.*, 114 *Ga.* 604 (40 S. E. 787, 56 L. R. A. 933), where it was held that "A bona fide purchaser at sheriff's sale, who has paid the purchase-money without notice of a secret equity, will be protected." There the question of possession by one holding adversely to the defendant in fi. fa. was not involved. The case has been distinguished and explained in *Bridger* v. *Exchange Bank*, 126 *Ga.* 825 (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118). That case did not involve the precise question involved in this case, and, as was said in the *Bridger* case, "the decision never intended to abrogate the general rule [as to the effect of possession], but merely to hold the facts of that case did not fall within it. What was said in the opinion must be construed in the light of the question involved." Applying the principles stated and ruled above, the question naturally arises as to the effect on the purchaser where he finds a person other than the defendant in fi. fa. in possession of the land, and at the same time finds on the record a security deed from the defendant in fi. fa. to the plaintiff in fi. fa. We think it follows from the rulings above, that proper diligence and inquiry on the part of the purchaser would discover to him the fact which is undisputed in the evidence, that the land offered for sale had, by agreement of the parties to the security deed, been relieved

28

from its lien. At least, under the undisputed evidence in this case, that is what would have taken place.

2, 3. The second and third headnotes do not require elaboration.

*Judgment reversed. All the Justices concur.*