FRANK LYNCH CO. v. NATIONAL CITY BANK OF CHICAGO.*

(Circuit Court of Appeals, Eighth Circuit.   October 21, 1919.)

No. 5393.

1. VENDOR AND PURCHASER ☜213(1)—CONTRACT FOR PURCHASE FOLLOWED BY POSSESSION VALID AGAINST VENDOR'S CREDITORS.

Despite Comp. Laws N. D. 1913, §§ 5413, 5595, 5594, defining convey-ances, and declaring that conveyances not recorded shall be void as against any attachment levied thereon, or judgment obtained at the suit of any party against the person in whose name title appears of record, the possession of land under a contract for purchase on installments is no-tice of title, and the purchaser is protected, though the contract be not recorded.

2. COURTS ☜366(16)—DECISIONS OF STATE COURTS ON RECORDING LAWS FOL-LOWED IN FEDERAL COURTS.

In determining questions of notice under a state's recording laws, the question being one of local real estate law, the federal courts will follow the decision of the highest state court.

3. JUDGMENT ☜788(2)—RIGHTS OF ASSIGNEE OF VENDOR'S RIGHTS IN LAND CONTRACT AGAINST VENDOR'S JUDGMENT CREDITOR.

The possession of one who entered on land under a contract for the purchase thereof on installments is not only notice to the whole world of his rights, though the contract was not recorded as authorized by Comp. Laws N. D. 1913, § 5594, but is notice that notes given for deferred purchase money may be negotiated, and where such notes were nego-tiated for a valuable consideration and the contract assigned, the assignee takes priority of one who recovered judgment against the original ven-dor before the assignment of the contract, etc., was recorded.

4. MARSHALING ASSETS AND SECURITIES ☜10—RIGHTS OF CONFLICTING CREDI-TORS.

Where the owner of two quarter sections of land, each subject to two mortgages covering both parcels, after contracting to sell one quarter section on installments and admitting the purchaser into possession, ne-gotiated the notes representing the unpaid purchase money and as-signed the contract to appellant, but before the assignment of the con-tract, etc., was recorded, respondent recovered judgment against the owner, held, that appellant, as against respondent, the judgment creditor, was entitled to have the original mortgages first satisfied out of the quarter section which had not been sold on installments, under the rule that, when one has a lien on several things, and other persons have sub-ordinate liens on or interests in some, but not all, of the things, the person having the prior lien, if he can do so without risk of loss, etc., must resort first to the things on which he has an exclusive lien.

5. ESTOPPEL ☜78(4)—RIGHT TO URGE DOCTRINE OF MARSHALING SECURITIES AF-FECTED BY AGREEMENT.

Where a vendor who had sold on installments one of two quarter sec-tions, each of which was subject to mortgages covering the whole, there-after assigned the contract and notes representing the unpaid purchase money, held, that the assignee was not estopped as against one who re-covered judgment against the vendor before recordation of the assignment of the contract, etc., from insisting that the original mortgagee first ex-haust the security of the quarter section not sold on installments, because, when the assignee bought the notes of the purchaser, it also took a deed to the quarter section, etc., and agreed to pay the incumbrances on both, for the agreement was made on condition that there was then owing a fixed sum on the notes of the purchaser, and that the assignee should have those notes paid to it, and the judgment creditor could assert no greater rights than the vendor.

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Suit by Arno Kresse, in the nature of an interpleader, against the Frank Lynch Company and the National City Bank of Chicago. From a decree in favor of the latter, the former appeals. Reversed and remanded.

Edward Engerud, of Fargo, N. D. (Engerud, Divet, Holt & Frame, of Fargo, N. D., on the brief), for appellant.

A. W. Cupler, of Fargo, N. D. (B. G. Tenneson and Ed Pierce, both of Fargo, N. D., and G. L. Wire, of Chicago, Ill., on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. The Northern Trading Company, a corporation, made a contract with Arno Kresse to sell and convey to him the southeast quarter of section 19, in township 139 north, of range 53 west of the fifth principal meridian, free from all incumbrances, upon his payment of his six promissory notes given for a part of the purchase price, maturing at various dates between November 1, 1913, the date of the contract, and October 21, 1921. Kresse immediately took possession, and has since continued in the open possession of the land. When the contract was made, this quarter section and the southwest quarter of section 19, of each of which the Trading Company was the owner, were subject to two recorded mortgages, each of which covered both quarter sections. On January 21, 1916, there was owing by Kresse on his notes and contract about $4,655 and some interest. There was owing on the first mortgage about $4,000, and on the second mortgage about $3,545.50. On that day, for a valuable consideration, the Trading Company indorsed Kresse's notes, sold and delivered them, a written assignment of them, and of its contract with him, and its title in the two quarter sections to the Frank Lynch Company, and delivered to it a deed thereof. On January 22, 1916, before the assignment of the contract or the deed were recorded, the National City Bank of Chicago recovered and docketed a judgment for $15,711.50 against the Trading Company, in whose name the title, subject to the two mortgages, appeared of record at that time. Then the bank and the Lynch Company each claimed that it was entitled to the payment of the amount Kresse still owed for the purchase of his quarter, and he brought this action against each of them and against the respective holders of the two prior mortgages, offered to pay the amount he still owed on his notes, and prayed that the validity and priority of the liens on his quarter section be adjudged, and the Lynch Company be required to pay off all liens thereon and to convey to him a clear title.

After a hearing of the evidence, pursuant to the stipulations of the parties and the findings and directions of the court, Kresse paid into court the amount owing on his purchase, the liens of the mortgages and of the judgment on his quarter were released, a clear title there-

261 F.—31

to was conveyed to him, and all the issues in the case were settled, except the disposition of the fund derived from the payment into court by Kresse of the unpaid part of his purchase price, which amounted to $5,476.25 in September, 1918, when the court below made its special findings of fact and conclusions of law and entered its decree to the effect: (1) That the judgment lien of the National City Bank's judgment on each quarter section was prior and superior to the rights of the Lynch Company; and (2) that the fund paid in by Kresse in satisfaction of his notes for the purchase price of the southeast quarter should be applied, first, to the payment of the first mortgage, and, second, to the payment of the second mortgage upon both quarter sections.

Counsel for the Lynch Company complain of these findings and this decree, and contend that the court should have held: (1) That its right to the fund derived from Kresse's payments owing on his notes was superior to the lien of the bank's judgments; and (2) that the southwest quarter should first be applied to the payment of the two blanket mortgages in their order of priority, rather than the purchase money Kresse paid on his notes for the southeast quarter. So the real question is: Did the bank by virtue of the docketing on January 22, 1916, of its judgment against the Trading Company, the prior vendor of the southeast quarter to Kresse, who was then in open possession thereof, acquire a right to the unpaid portion of his purchase price, evidenced by his promissory notes, which had been indorsed to and assigned by the Trading Company to the Lynch Company for value on January 21, 1916?

[1] The bank insists that the court's affirmative answer to this question was right. The argument of its counsel is that the sale, indorsement, assignment, and delivery to the Lynch Company for value of Kresse's negotiable promissory notes and of the Trading Company's interest in its contract of sale to Kresse were void as against the bank's judgment lien, because the assignment of the Trading Company's interest in the contract and of the promissory notes was not recorded before the judgment was docketed. In support of this claim they cite the recording acts of North Dakota to the effect that—

"every conveyance by deed, mortgage or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void * * * as against any attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance" (Compiled Laws of North Dakota 1913, § 5594); that "the term 'conveyance,' as used in the last section, embraces every instrument in writing by which any estate or interest in real property is created, * * * or by which the title to any real property may be affected, except wills and powers of attorney" (section 5595); and that "every instrument, except a will in execution of a power, even though the power is one of revocation only, is to be deemed a conveyance within the meaning of the chapter on recording transfers" (section 5413).

But there is an implied general exception to the broad statement of recording statutes that unrecorded deeds and assignments of interests in real estate shall be void, to the effect that such grantees

named therein and such judgment creditors as have actual or constructive notice of such unrecorded deeds or assignments are not protected by the recording statutes. A contract by the owner of land to convey it to a grantee upon the future payment of installments of the purchase price, followed by the immediate possession of the land thereunder by the vendee, falls within this exception, although such a contract falls clearly far within the terms of the recording statutes. It is an "instrument in writing * * * by which the title to any real estate may be affected." Counsel for the bank concede that it is unnecessary to record such a contract and that such a contract supported by the possession of the vendee thereunder is not void as against a judgment creditor of the vendor notwithstanding the clear declaration of the statutes that every such conveyance is void. And why is it not void? Because the open possession of the land by the vendee is notice to all the world of the title and of the contract under which he claims, and of all the terms thereof, and because, when a vendor makes such a contract, he holds the legal title in trust for his cestui que trust, his vendee. The subsequent judgment creditor, the bank, therefore, had notice by the possession of Kresse when it docketed its judgment that the Trading Company's title to the southeast quarter was subject to Kresse's contract and his right thereunder, that Kresse had given his negotiable promissory notes for the unpaid purchase price, that they were negotiable, and that they might have been discounted or sold, or assigned to some third person.

[2, 3] But was Kresse's possession notice of every negotiation and assignment of his notes, and of the right of his vendor to their payment that had been made, although the assignment of the notes and of the contract by the vendor was not recorded, and therefore of the Trading Company's indorsement sale and assignment to the Lynch Company on the day before the judgment was docketed? The discussion of this question has taken a wide range in the arguments and briefs of counsel and has resulted in the citation of many authorities deemed pertinent or analogous. But this is a question of local real estate law, regarding which the federal courts follow the decisions of the highest judicial tribunal of the state in which the land is situated, where, as in this case, no question of a violation of the Constitution or laws of the United States, or of commercial or general law, is involved. Orvis v. Powell, 98 U. S. 176, 25 L. Ed. 238. The issue therefore becomes: What is the answer of the Supreme Court of North Dakota to this question? for its answer must prevail in this case, whatever other courts may have decided.

Before the Supreme Court of North Dakota clearly announced its final decision of this question the Supreme Court of Minnesota had answered it in the negative in a case where there were no negotiable notes involved and the instrument evidencing the agreement between the vendor of the land and the vendee thereof was a bond for a deed. Welles v. Baldwin, 28 Minn. 408, 10 N. W. 427. On the other hand, the Supreme Court of Georgia had answered it in the affirmative. Georgia State Building Association v. Faison, 114 Ga. 655, 40 S. E. 760, 762. In that case the vendee was in possession of the land under

a contract for a deed. He had given his promissory notes to the vendor for deferred payments of a part of the purchase price. The vendor transferred the notes to another, and afterward deeded the land to a third person, who had no notice of the transfer of the notes, except the open possession of the land by the original vendee. The court held that the possession of that vendee was notice to the subsequent grantee of the vendor of the possible transfer of the notes sufficient to put him on inquiry, and therefore of the fact, if such a fact there was, that the notes had been transferred to and were held by the third person, and its conclusion was that the right of the transferee of the notes to the payment by the vendee of the unpaid part of the purchase price was superior to that of the grantee of the vendor. It stated the principle of law on which it founded its decision in these words:

"One who buys from the vendor when such a vendee is thus in possession is charged with notice of every fact which due inquiry would bring to his knowledge. Such a purchaser, in contemplation of law, not only knows that the person in possession is a vendee under a bond for titles, but he also knows, if such be the fact, that the purchase-money notes have been transferred, and that they are payable no longer to the vendor, but are payable to whomsoever the vendee is legally or equitably bound to pay them."

To the same effect were Johnson v. Equitable Securities Co., 114 Ga. 604, 40 S. E. 787, 56 L. R. A. 933; Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; Curtis v. Moore, 152 N. Y. 159, 163, 46 N. E. 168, 57 Am. St. Rep. 506; Cooper v. Arnett, 95 Ky. 603, 26 S. W. 811.

After these decisions had been rendered this question arose in the Supreme Court of North Dakota in this way: Hall was the owner of the land and Quaschneck was his vendee in possession under Hall's unrecorded contract to convey, in which the deferred payments of the purchase price were evidenced by the vendee's negotiable notes payable to Hall. One of Quaschneck's notes was for $3,700, and Hall assigned it to the Amboy Bank as collateral security for his debt to that bank. Afterwards Hall mortgaged the land to Caldwell, and Caldwell assigned the mortgage for value to Blodgett. The mortgage was recorded October 12, 1908, and the assignment was recorded December 5, 1908. Blodgett took the mortgage for value, in good faith, in reliance on the record title, and the question was whether the Bank of Amboy or Blodgett had the better right to the moneys owing by Quaschneck on his note held by the bank. The Supreme Court of North Dakota held: (1) That Quaschneck's contract for a deed was subject to the recording acts; that the recording acts were inapplicable to that case, because Quaschneck's open possession of the land under a contract gave notice to all the world of his rights; and (2) that that possession also gave notice to the mortgagee in, and to the assignee of, the mortgage, not only of Quaschneck's interest and rights in the lands, but also of Hall's pledge of Quaschneck's note to the Bank of Amboy, and of that bank's rights, and that the bank's right to the payment of Quaschneck's note pledged to it was superior in law and in equity to the claim thereto of Hall's mortgagee, or of that mortgagee's assignee. That court cited, adopted and followed the opinion and the reasoning of the Georgia court in the Faison Case, 114 Ga.

655, 40 S. E. 760, 762, and held that the mortgagee, Caldwell, "was also bound to know of the transfer by" the vendor "of the purchase-money notes * * * and of the" vendee's "legal duty to pay such notes to the holders thereof;" that Blodgett, the assignee of the mortgage, was bound to know of the outstanding notes given by the plaintiff (Quaschneck) to Hall for the purchase price of such land, and that they had been negotiated to third persons, and that Blodgett's rights were therefore subordinate to the rights of the holders of such notes. Quaschneck v. Blodgett, 32 N. D. 603, 612, 156 N. W. 216, 218.

Counsel for the bank have earnestly argued that the facts in, and the questions decided by the court in Quaschneck's Case, so materially differ from those in the case at bar, that the decision in the former case is not controlling here. All these arguments have been read and carefully considered, but they have failed to persuade. In the opinion of this court the decision and opinion in Quaschneck's Case established this rule of law regarding the titles to real estate in the state of North Dakota. The open possession of land by a vendee under the contract of the owner to sell and convey it to him upon the payment of the part of the purchase price thereof evidenced by his negotiable notes described in the contract is notice to grantees, mortgagees, and judgment creditors of the vendor of the contract, of its terms, and of any unrecorded transfer by the vendor of the vendee's notes to a third person made before the vendor made his grants or mortgage of the land, or before the judgment against him was docketed, and the transferee of the notes has, notwithstanding the recording statutes, the superior right to the payment of the notes to himself. The Trading Company in this case for value indorsed, sold, delivered, and assigned the promissory notes of Kresse to the Lynch Company before the judgment of the bank was docketed. The open possession of the land by Kresse under his contract of purchase was notice to the bank of that contract and of this sale and transfer when its judgment was docketed, although the assignment and deed accompanying the transfer were not recorded and the right of the Lynch Company to the notes, to the payment thereof to it, and to the fund derived from their payment, was under this settled rule of law on this subject in North Dakota superior to the right of the bank thereto and superior to the lien of its judgment either on the fund or on the land. The bank's judgment lien was subject to the liens of the two mortgages on the two quarter sections and to the right of the Lynch Company to the payment to it out of the southeast quarter section of the unpaid notes of Kresse, and to the fund such payments should produce.

[4, 5] The court below, as a result of its opposite conclusion, caused the fund derived from the payment of the notes of Kresse to be applied to the payment of the two blanket mortgages, thereby satisfying one of them and leaving $4,049.02 owing on the other, caused the southeast quarter to be released from both mortgages, and conveyed to Kresse free from all incumbrances, leaving the lien of the second mortgage on the southwest quarter for only $4,049.02, and thereby gave the entire benefit of the fund, $5,476.25, derived from the payment of

Kresse's notes, to the bank. Counsel for the Lynch Company claim that, as the bank's lien on the southeast quarter was inferior to the Lynch Company's right to this fund, the latter should be adjudged to be secured by a lien upon the southwest quarter for this $5,476.25 superior to the lien of the bank, and subject only to the payment of the $4,049.02 due under the blanket mortgage. On the other hand, counsel for the bank insist that even if the right of the Lynch Company to this $5,476.25 was superior to that of the bank, each of the two quarter sections should be made to pay the two prior blanket mortgages in proportion to their respective values, and that this $5,476.25 should be applied to pay the proportion of them which the southeast quarter should bear.

The court below did not find, and the evidence does not prove, the respective values of the two quarters. Assuming that each quarter was worth $7,500 at the time of the decree, the application of the contention of the Lynch Company would add to the prior lien of the unpaid $4,049.02 its lien for the $5,476.25, and would thus render the lien of the bank worthless. The application of the theory of the bank would enforce a lien for one-half of the $9,525.27 which was due on the two mortgages, or $4,762.63 on each quarter, would apply the fund from the notes, $5,476.25, to the payment of these mortgage liens upon the southeast quarter, thus satisfying them, and would leave the bank with a lien on the southwest quarter, subject only to the payment of the $4,762.63, worth the difference between $4,762.63 and the assumed value of the quarter, or $2,737.37. Neither of these claims appears to be in exact accord with the rules and principles of equity. When the bank docketed its judgment, Kresse was in open possession of his quarter section, and the Lynch Company was the owner of his notes for the purchase price which has produced this $5,476.25. The lien of the bank's judgment attached to the title of the Trading Company on the southwest quarter, subject only to the two blanket mortgages. It attached to the title of the Trading Company to the southeast quarter, subject to the two blanket mortgages, and subject also to Kresse's right to the title to that quarter upon the payment of his notes, and to the Lynch Company's superior rights to the notes and to the moneys derived from their payment. As the mortgagees held security upon both quarters, while Kresse and the Lynch Company held security upon but one, either of the latter had the equitable right to compel the mortgagees first to exhaust their security on the southwest quarter before resorting to the southeast quarter for their payment.

"When one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some, but not all, of the same things, the person having the prior lien, if he can do so without risk of loss to himself or injustice to other persons, must resort to the property in the following order, on the demand of any party interested: (1) To the things upon which he has an exclusive lien; (2) * * * ; (3) * * * ; (4) * * * ." Orvis v. Powell, 98 U. S. 176, 25 L. Ed. 238; Union Bank v. Stoddard, 7 N. D. 201, 73 N. W. 527; Bank v. Tufts, 14 N. D. 238, 103 N. W. 760, 116 Am. St. Rep. 682; Savings Bank v. Creswell, 100 U. S. 630, 25 L. Ed. 713.

If this had been done at the time of the decree, and if the southwest quarter had brought its assumed value $7,500, it would have left

the southeast quarter subject to mortgage liens to the amount of $2,-025.27 and to the right of the Lynch Company to the $5,476.25, amounting in the aggregate to $7,501.52, leaving the lien of the judgment worthless. The conclusion of the court is that the rights and equities of these parties should be adjudged pursuant to the rule of equity and the illustration of it which has just been stated, after the respective values of the two quarter sections have been proved, and it seems unnecessary to pursue this matter further, because it is probable that either by stipulations of the parties or by a molding of the decree the indicated result will be readily attained.

The arguments against the objections to this conclusion made by counsel for the bank in argument and in brief received meditation and consideration before this conclusion was reached, but they proved either inapplicable or untenable. Their contention that the Lynch Company was estopped from enforcing the equitable principle of the marshaling of assets and from compelling the mortgagees to exhaust the southwest quarter first, because when it bought Kresse's notes it took a deed of the southwest quarter and agreed with the Trading Company to pay the incumbrances upon both quarters, overlooks this conclusive answer to it, viz. that this undertaking of the Lynch Company was made on the express condition and agreement of the Trading Company that there was then owing on Kresse's notes $4,655, and that the Lynch Company should have these notes and have them paid to it. Under these circumstances the Trading Company was estopped from denying to the Lynch Company every equitable right available to make its ownership of the notes and of their proceeds beneficial to it, and the bank's claim, based upon a lien which attached to nothing but the equity of the Trading Company, after it had made this agreement and transferred the notes, rose no higher than its source.

Let the decree below be reversed, and let the case be remanded to the court below for further proceedings, in accordance with the views expressed in this opinion.